The opinion of the Court was delivered by
Tilghman C. J. —
David Lenox, the plaintiff below, claimed under an application, in the name of William M'Corkle, dated 3d April, 1769, on which a survey was made the 23d October, 1769. The plaintiff having given in evidence the application and survey, produced a deed from William M'-Corkle to Daniel M'Fall, dated 30th June, 1769, and sundry conveyances by which the title was brought down to John Lukens deceased, and then shewed a patent to himself and Abraham Lukens, deceased, surviving executors of the said John Lukens. Thus the title was complete in the plaintiff. The defendants having proved that Caleb Farley was in possession of part of the land in dispute in the year 1787, offered in evidence two papers, which were delivered to him by M'-Corkle about the year 1787, and had remained in his possession ever since. One of these papers purported to be the draft of a survey on William M'-Corklé's application, signed by Charles Lukens. On the face of the draft, was written, James M'-Corkle, claiming under. William M'-Corkle and on the back was the following endorsement, u No. 1539, Berks. James M’-Corkle, in right of William M'-Corkle, 319 acres. Ret.d into the Surv. Gen.l’s office.’’ The draft was not signed by Charles Lukens, as deputy surveyor, that is to say, the letters D. S. were not put after his name; the signature was simply “ Charles Lukens.” Nor was it directed to the Surveyor-General. The Court rejected this paper, and I think, with great propriety. It was a private paper, not found in the office oí the deputy surveyor or Surveyor-General, or any other public office. It bore *397 strong marks of suspicion on its face ; for it differed from the official draft of the survey on M'-Corkle's application, which had been given in evidence by the plaintiff. The words, “ James M'Coikle claiming under William M'-Corkle,,” might have been put on for the purpose of defeating the title of the plaintiff, who claimed under a deed from William M'-Corkle. Besides, the endorsement declared, that it had been returned into the Surveyor-General’s office. If so, why was not a certified copy of the return produced, which would have been good evidence. There will be no safety in titles, if inofficial papers of this kind are suffered to go in evidence. I am of opinion, therefore, that the Court was right in rejecting it. The other paper purported to be an order from John Lukens, Surveyor-General, directed to his son, Charles Lukens, deputy surveyor, to make a survey on M'Corkle’s application. It was signed “ John Lukens,” but not being certified as a copy of an official paper, it could not be evidence unless it was an original order. But there was no proof of its being an original order. It was not found in the office of the deputy surveyor, Charles Lukens, nor was the hand writing of the Surveyor-General, John Lukens, proved. Clearly, therefore, it was not evidence. There was another bill of exceptions on the record, to the opinion of the Court in rejecting the depositions of Sarah M'-Corkle and Jennet Knox. But this exception has been relinquished.
The remaining exception was to the charge of the Court. The defendants relied mainly on their possession and the Statute of Limitations. They did indeed allege, that the deed from William M’-Corkle to Daniel M'-Fall, under which the plaintiff claimed, was forged, but of that there was no proof. And they gave in evidence a deed from Robert M'-Corkle (brother of William, and said by the defendants to be his heir) to James M'Corkle, dated the 10th of January, 1773, and another deed from the same Robert M'-Corkle to Caleb Farley, dated the 30th of August, 1807. The defendants gave evidence also, that one Jacob Ant, who was in possession of part of this land, (and as the defendants alleged, under one of the M'Corkles) sold his right to Caleb Farley in the year 1787. The defendants had been in possession of a few acres of the tract in dispute above twenty- *398 one years, which they had cleared and enclosed with a fence, and for that part, the Judge instructed the jury, the defendant’s title would be good by the Statute of Limitations. But the defendants contended that they were in possession, by construction of law, of the whole tract, because they had purchased of Ant and of Robert MiCorkle. On that point, the Judge charged, that when the defendants obtained a deed from Robert M'-Corkle, on the 30th of August, 1807, as this deed was for the whole tract according to the return, of survey on William M'-Corkle9 s application, the defendants being in the actual possession of part, and claiming the whole under this deed, were, in construction of 'law, from, the date of that deed, in possession of the whole, so as ’to give operation, on' the whole, to the Statute of Limitations. But this would not serve the defendants’ purpose; because there were not twenty-one years from the 30th of August, 1807, (the date of the deed) to the commencement of this ejectment. The defendants then had recourse to their title under Ant, as to which the Court instructed the jury, that if Ant had possession of a few acres, without title, his conveyance to Caleb Farley would not extend the possession of Farley, by construction of law, beyond the bounds of the inclosed land; but that' it would. be otherwise if Ant was in possession of, or had any colour of title to, the whole land, under the M'-Corkles. There may be a little obscurity in some of the Judge’s expressions, but fairly construed, his meaning is as I have stated it. And I can perceive no error in it; for this .Court has repeatedly decided, that where a man enters on a tract of appropriated land, without title or colour of title, the Statute of Limitations will not protect him beyond his accual inclosures. I am, therefore, of opinion, that the plaintiffs in error have not supported either of their exceptions, and the judgment should be affirmed.
Judgment affirmed.