[No. 10629. Department One. January 6, 1913.]

MANSON F. BACKUS, *Respondent*, v. A. S. FEEKS *et al.*, *Appellants.*[1]

GUARANTY—CONSIDERATION—GUARANTEEING A VOIDABLE LEASE. Since an unacknowledged lease for a term exceeding one year, where the tenant takes possession, is good as a lease from month to month until terminated by the statutory notice, it constitutes a sufficient consideration for the obligation of sureties in a bond given by the tenant conditioned that he perform all the covenants, agreements and obligations contained in the lease and save the lessor harmless from all loss by reason of its execution; and the bond guarantees the performance of the terms of the lease as written, since it was not an immoral or illegal contract or against public policy.

GUARANTY—LIABILITY OF SURETY. Sureties in a bond, guaranteeing the performance of a contract which is not illegal or immoral, are bound by their guaranty although the contract cannot be enforced against the principal.

FRAUDS, STATUTE OF. The statute of frauds being personal to the debtor, cannot be taken advantage of by sureties who guaranteed the performance of a lease which was voidable under the statute of frauds.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 2, 1912, upon findings in

[1]Reported in 129 Pac. 86.

favor of the plaintiff, in an action upon a bond, after a trial
to the court.    Affirmed.

*Murphy & Wall*, for appellants.

*Higgins & Hughes* (*Hyman Zettler*, of counsel), for re-
spondent.

Gose, J.—On the 25th day of September, 1909, the plain-
tiff, his wife uniting, executed to H. N. Winters and Mamie
Winters, his wife, an unacknowledged lease upon the Man-
hattan Building, in the city of Seattle, to run for a period
of five years from the first day of October following.    The
lessees covenanted and agreed to pay as rental therefor, $1,-
050 on the first days of October, November, and December,
1909; $1,500 on the first day of January, 1910, and on the
first day of each month thereafter to and including the first
day of September, 1910; $1,600 on the first day of October,
1910, and the same amount on the first day of each month
thereafter to and including the first day of September, 1911;
$1,700 on the first day of October, 1911, and a like amount
on the first day of each month thereafter to and including
the first day of September, 1914.    On the 29th day of Sep-
tember, 1909, the lessees, as principals, and A. S. Feeks and
William H. Ruttle, as sureties, gave to the plaintiff their
joint and several bond, which recites the execution of the
lease; that the lease contains certain "covenants, agreements
and obligations to be kept and performed" by the lessees;
and provides:

"Now therefore, if the said H. N. Winters and Mamie
Winters, his wife, their heirs, executors, or administrators,
shall at all times and in every particular keep and perform
in every way all the covenants, agreements and obligations
in said lease contained, and at the expiration or earlier de-
termination of said lease return the property therein de-
mised to the said M. F. Backus and wife in a condition pro-
vided in said lease and at all times hereafter indemnify and
save harmless the said Backus and wife against all loss, dam-

age or costs arising by reason of the execution of said lease, then this obligation shall be void."

The lease and bond were delivered simultaneously on September 29, and the lessee took possssion of the leased premises on October 1, and remained in possession until April 6 following when he abandoned the premises without notice to the landlord. On the 15th day of April, the receiver appointed by the state court took possession of the premises, and on the 26th day of April, delivered possession to the trustee in bankruptcy appointed by the Federal court. On the 6th day of May, the referee in bankruptcy directed the receiver to surrender the premises to the plaintiff and to disclaim and abandon the lease, and on that day the plaintiff resumed possession of the premises. The rent for the months of March, April and May, amounting to $4,500, was then due under the terms of the lease, and had not been paid. Thereafter, and on the 3d day of June, the plaintiff leased the premises to a third party for a term of five years upon a rental that will result in a loss to him of an amount largely in excess of the penalty of the bond. The court found that the rental reserved in the last-named lease was the full market rental value of the premises at that time, and that the lease was expeditiously made. This action was thereafter instituted by the plaintiff to recover from the sureties the amount named in their bond, to wit, $5,000. A judgment was entered against them for that amount, and the defendant Ruttle has appealed.

He contends that the lease, being unacknowledged and for a term exceeding one year, is void under our statute, and hence that there is no cause of action on the bond. While the lease was not enforceable other than as a tenancy from month to month, it was not void, but valid and binding, until terminated by the statutory notice. In *Northcraft v. Blumauer*, 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071, we said that a parol lease of real property for a period longer than one year, where the lessee had taken possession with the

consent of the lessor, "is only voidable." In *Koschnitzky v. Hammond Lum. Co.*, 57 Wash. 320, 106 Pac. 900, in considering the effect of an unacknowledged lease of real property for a term exceeding one year, we said: "So that it will be seen that the statute does not make the lease void *in toto;*" but that, in the absence of such equities as would work an estoppel, it would create a tenancy from month to month or from period to period on which rent was payable, terminable by giving proper notice. In *Anderson v. Frye & Bruhn*, 69 Wash. 89, 124 Pac. 499, we held, that an unacknowledged lease of real property for the term of one year "with the privilege of two years' renewal," at a stipulated monthly rental, created a paper tenancy for a period exceeding one year, that it was not enforceable as a lease for one year only, but that it was a lease from month to month, and terminable by either party upon his giving the notice provided by the statute, Rem. & Bal. Code, § 8803. The language of the opinion is that the lease was "void and unenforceable" as a lease for one year, in that it created a privilege of renewal for a period beyond one year, and that "the tenancy under which appellant was in possession of the property prior to October 1, 1910, was terminated on that day by notice and vacation."

In *Snyder v. Harding*, 38 Wash. 666, 80 Pac. 789, it was held that one in the possession of real property under a defective lease, but with the implied consent of the owner, was not a wrongdoer, but a tenant from period to period upon which the rent was payable, and that the rental reserved in the lease was the measure and the limit of the tenant's liability. The rule of construction underlying these cases is that, where there has been an attempt to let real property for a period exceeding a year by means of an unacknowledged written lease, and the lessee has gone into possession with the express or implied consent of the owner, a tenancy from month to month or from period to period upon which rent is payable is created, and that the tenancy is terminable by

the statutory notice given by either party to the other. It is apparent from a reading of these cases that the word "void" is used as the legal equivalent for unenforceable, and all that we have held is that, where the lease is for more than a year and unacknowledged, if the tenant has gone into possession, he becomes a tenant from month to month or from period to period upon which rent is payable, and that his tenancy is terminable under the provisions of Rem. & Bal. Code, § 8803.

The sureties, by the terms of the bond, guaranteed (1) that the lessees should perform the "covenants, agreements and obligations" contained in the lease, and (2) that they would "indemnify and save harmless the said Backus and wife against all loss, damage, or costs arising by reason of the execution of said lease." The essential inquiry here is, as indeed it is in all cases, what was the intention of the parties? Obviously their intention was that the lessees should keep their covenants as they were written—that is, that they should pay the rent for the full leasehold period. It was not contemplated that they might hold possession under the lease for a month or more, and then give the statutory notice of their intention to vacate the premises and thus discharge the sureties from any liability on the bond other than the payment of the rent then accrued. While the lease is not enforceable except as a lease from month to month, it was not an immoral contract, or an illegal one in the sense that it violated any rule of public policy, and hence the parties were at liberty to mutually keep their covenants.

In treating of the exceptions to the rule that the extent of the liability of the principal debtor measures and limits the liability of the surety, in 20 Cyc. 1421, the following view is announced:

"Important exceptions to the above rule exist which must not be overlooked. They are found in those cases where the defect is not in the contract itself but pertains to those matters which are personal to the principal debtor or they arise from causes which originate in the law. A guaranty of an existing contract may stand by itself, although the obligation

guaranteed is invalid and it will usually be found that where the fact that the supposed principal debtor is not bound is held to be a defense on behalf of the guarantor, such fact has also resulted in a failure of consideration for the contract of guaranty or that such contract has been brought about by fraud or has been entered into under a mutual mistake. And as the guarantor may by the terms of his contract make himself liable for the principal debt, although it be invalid, the question of whether the liability of a guarantor is to be measured by the liability of the principal debtor is largely a matter of interpretation of the contract of guaranty."

This principle finds support in the following cases: *McLaughlin v. McGovern*, 34 Barb. 208; *Yorkshire Railway Wagon Co. v. Maclure*, 19 Ch. Div. L. R. 478, 489; *Robbins v. Robinson*, 176 Pa. St. 341, 35 Atl. 337; *Mason v. Nichols*, 22 Wis. 360; *Kiessig v. Allspaugh*, 99 Cal. 452, 34 Pac. 106; *People's Lumber Co. v. Gillard*, 136 Cal. 55, 68 Pac. 576; *Slocum v. Taylor*, 8 Serg. & Rawle 398; *Kyger v. Sipe*, 89 Va. 507, 16 S. E. 627; *Davis v. Statts*, 43 Ind. 103, 13 Am. Rep. 382; *Mitchell v. Hydraulic Bldg. Stone Co.* (Tex Civ. App.), 129 S. W. 148.

In *McLaughlin v. McGovern*, the lessees entered into and remained in possession of the leased premises, but only one of them signed the lease. The defendant guaranteed "the fulfillment [by the lessees] for the part of this agreement to be performed by them," and was held liable on the guaranty. The court said:

"What is the obligation assumed by the defendant in this case? It is not that Reynolds and Tague shall execute the lease, but that they shall fulfill the engagements contained in the instrument upon which his guaranty was indorsed."

In the *Maclure* case, it was held that the lender may recover against the sureties although the loan was made to a railway company which could not borrow. The same principle was announced in *Robbins v. Robinson*, and in *Mason v. Nichols*. In *Kiessig v. Allspaugh*, the sureties upon a con-

17—71 WASH.

tractor's bond were held liable, notwithstanding the fact that the contract itself was "wholly void" because not filed with the recorder as required by statute. The court said that, although the contract could not be enforced because not recorded, "the contractor might nevertheless perform, and the plaintiff could accept such performance, and neither be guilty of any wrong in so doing." A like principle was announced in *People's Lumber Co. v. Gillard, supra.* In *Slocum v. Taylor,* it was held that a surety on a bond conditioned for the performance of an award of arbitrators was liable, although the award was given in an action instituted before a justice of the peace for an amount exceeding his jurisdiction, and his judgment had been reversed. In *Kyger v. Sipe,* it was held that the surety was liable upon his bond where the principal, an infant, had disaffirmed and was therefore discharged. In *Davis v. Statts,* a like rule was applied to the sureties upon the note of a married woman who was discharged upon her plea of coverture. In *Mitchell v. Hydraulic Bldg. Stone Co.,* it was held that the sureties upon a bond, given by a private corporation as security for the fulfillment of a building contract void as to it because in excess of its powers as defined by its charter, were liable.

There is another reason for affirming the judgment. Our statute in reference to the execution and construction of leases is a statute of frauds only. In *First Presbyterian Church v. Swanson,* 100 Ill. App. 39, it was held that the defense of the statute of frauds was a privilege personal to the principal, and that the sureties upon a contractor's bond may not invoke the statute on account of the failure of their principal to sign the contract secured by the bond. 20 Cyc. 306, states that this is almost the universal rule.

The appellant relies upon the rule stated in 1 Brandt on Suretyship Guaranty (3d ed.), § 163:

"A surety is not entitled to every exception which the principal debtor may urge. He has a right to oppose all which

are *inherent* to the debt not those which are personal to the debtor;"

insisting that the obligation of the sureties in the case at bar is "inherent to the debt." We are not able to agree with this contention.

The judgment is affirmed.

MOUNT, C. J., PARKER, CROW, and CHADWICK, JJ., concur.