**ZIMMERMANN et al. v. MILLER, Alien Property Custodian, et al.**

(District Court, S. D. New York. April 25, 1924.)

**1. Banks and banking ⊚133—Until demand for balance of American's deposit in Austrian bank, balance not due and payable.**

Until demand for payment of balance of American's deposit in Austrian bank, balance was not due and payable.

**2. War ⊚10(1)—During World War and until July 14, 1919, American depositor could not lawfully demand payment of deposit in Austrian bank, except on Alien Property Custodian to fix maturity date.**

During World War and thereafter to July 14, 1919, when trade relations between United States and Austria were resumed, American depositor could not lawfully make demand for payment of deposit in Austrian bank, even if bank had agent in United States, and though bank during war continued to make payments on depositor's outstanding orders, but depositor could mature deposit by making demand on Alien Property Custodian under Trading with Enemy Act, § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½dd).

**3. War ⊚10(1)—Fall in rate of Austrian exchange at risk of American depositors failing to demand payment from Alien Property Custodian.**

Where American depositors in Austrian bank failed to demand payment of deposit from Alien Property Custodian under Trading with Enemy Act, § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½dd), during period of World War, fall in rate of Austrian exchange was at their own risk.

**4. War ⊚10(1)—Cable to Austrian bank, though lacking requirement of legal demand, held sufficient to fix maturity date of depositor's account.**

Cable by American depositor to Austrian bank requesting bank's consent to payment of balance of deposit account out of bank's funds in hands of Alien Property Custodian to obviate lawsuit, though lacking some requirements of legal demand, apprised bank that depositor wanted money and fixed date as of which account should be settled.

**5. War ⊜10(1)—Austrian bank's deposit of balance of American's account with Austrian court held not to discharge it of further liability and risk of decline·in Austrian currency.**

American depositor's remedy under Trading with Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j) cannot be frustrated by Austrian bank's deposit of balance of his account with Austrian court under Austrian law, and did not discharge its obligation, and cast risk of further decline of Austrian currency on depositor, whose previous demand for payment had been refused.

In Equity. Suit by Leopold Zimmermann and others, copartners doing business under the firm name and style of Zimmermann & Forshay, as brokers, against Thomas W. Miller, as Alien Property Custodian of the United States, and others. Judgment for plaintiffs.

Stockton & Stockton, of New York City (Joseph M. Hartfield and Hamilton Vreeland, Jr., both of New York City, of counsel), for plaintiffs.

Wm. Hayward, U. S. Atty., of New York City (Thomas J. Crawford, Asst. U. S. Atty., of New York City, of counsel), for defendants Miller and White.

Manhein & Wachtell, of New York City, for defendant Wiener Bank-Verein, of Vienna, Austria.

KNOX, District Judge. This suit is brought under section 9 of the Trading With the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e) for the recovery by plaintiffs of the dollar value as of April 6, 1917, of 2,036,799.03 kronen which were then on deposit with the Wiener Bank-Verein of Vienna, Austria, and which are said to have been due and owing.

The Alien Property Custodian and the Treasurer of the United States admit their possession of certain money and property which was, pursuant to statute requirement, determined to belong to the bank during the time it was an alien enemy, and which, for that reason, was sequestered. They also allege that suits of persons other than plaintiffs·are pending against them whereby it is sought to collect the sum of about $750,000 from said money and property.

The bank admits that as of April 6, 1917, plaintiffs had on deposit with it the specific ·number of kronen, and that these were held subject to orders for the disposal thereof. Denial is made that payment of the kronen was due as claimed by plaintiffs.

The parties, excepting·the·Custodian and the Treasurer, have stipulated the following facts:

(1) That the bank was organized, and prior to and during the war functioned under the laws of the Empire of Austria Hungary; that it still does business in Vienna under a validation of its charter by the Austrian government. It has no branch office within the United States.

(2) That plaintiffs, for a number of years preceding the outbreak of war, maintained a bank account with the bank in which they made deposits in kronen for the purpose of providing payment of their drafts and orders issued and transmitted by letter, cable, wireless, etc., and drawn on and payable at the bank.

(3) That at least every three months plaintiffs received in ordinary course periodic statements of the condition of the account. These were upon a printed form containing the following provisions:

"The relations existing between us and our business friends will in general be governed by the laws in force in Austria. So far as transactions without main office come into consideration, the city of Vienna is to be considered the place where payment is to be made or where obligations are to be. made, as the case may be. In transactions existing between customers and our branches, the city where the branch is domiciled becomes the place of payment or the place of fulfillment of liabilities as the case may be."

(4) That at all times from a time prior to the opening of the account, section 1425 of the General Court Law of Austria continued and remained in force. It reads:

"If a debt cannot be paid because the creditor is unknown, absent or dissatisfied with the offer, or because of other important reasons, the debtor may deposit in court the subject-matter in dispute; or, if it is not susceptible of such action he may take legal steps for its custody. If legally carried out and the creditor has been informed thereof, either of these measures discharges the debtor of his obligation, and places the subject-matter delivered at the risk of the creditor."

(5) That after July 14, 1919, and prior to April 1, 1920, plaintiffs refused to accept the kronen on deposit with the bank, offered either in kind or in United States currency, at the rate of exchange then prevailing, but demanded the amount of said kronen on deposit as of April 6, 1917, at the average cable transfer rate of exchange between the two·currencies prevailing in the United

States during the month immediately preceding the outbreak of the war, viz., 11.18 United States cents for each kronen.

(6) That on or about April 1, 1920, the bank deposited in the Circuit Court for the Interior at Vienna, in part 6 thereof, the number of kronen stated to be due and owing as of April 6, 1917.

(7) That such Circuit Court was the appropriate depository for deposits made pursuant to section 1425 of the General Civil Law Code.

(8) That notice of the deposit was given to and received by the plaintiffs.

(8a) That plaintiffs' account, during its existence, was credited with interest at 2½ per cent. per annum down to April 6, 1917, and such credits were shown on all quarterly statements of the account; and that such interest was calculated to the day of the deposit of the funds in the Circuit Court and was included therein.

(8b) That on March 25, 1919, plaintiffs filed their claim with the Alien Property Custodian for the moneys alleged to be due and owing from the bank.

[1, 2] Prior to the outbreak of war between the United States and Austria, upon December 7, 1917, plaintiffs made no demand for their balance upon deposit with the bank. Until such demand was made, the balance upon deposit was not due and payable. Zimmermann & Forshay v. Miller and Deutsche Bank, decided April 25, 1924. During the continuance of the war, and down to July 14, 1919, when trade relations and communications were reestablished between Nationals of the United States and Austria, no demand upon the bank for payment could lawfully be made. This is true even though the bank at all times had an agent within the United States. The agent, assuming him to have been in funds, was not permitted to deal with plaintiffs upon behalf of his principal. Nor is the circumstance that the bank, throughout the period of the war, continued to make payments upon account of outstanding orders of the plaintiffs (there being no provision of Austrian law to the contrary) of any particular consequence. The war and our law, incident thereto, made it impossible to demand payment of the account from the bank. Had it been the desire of plaintiffs to render their deposit due and payable during the progress of the war, they should have made demand upon the Custodian. I quote from section 8 of the Trading with the Enemy Act (section 3115½dd):

"That any person not an enemy or ally of enemy who is a party to any lawful contract with an enemy or ally of enemy, the terms of which provide for a termination thereof upon notice or for acceleration of maturity on presentation or demand, * * * may terminate or mature such contract by notice or presentation or demand served or made on the Alien Property Custodian in accordance with the law and the terms of such instrument or contract and under such rules and regulations as the President shall prescribe; and such notice and such presentation and demand shall have, in all respects, the same force and effect as if duly served or made upon the enemy or ally of enemy personally."

[3] Not having seen fit to take advantage of this provision of law, plaintiffs cannot here be heard to complain that during their inaction and before the time at which they demanded payment from the bank after July 14, 1919, the rate of exchange of Austrian kronen continued to fall to their detriment.

[4] So far as the evidence shows, the first communication bearing the suggestion of a demand for the payment of plaintiffs' credit balance is to be found in their cable of August 12, 1919, reading as follows:

"Referring to our old balance will you consent to American Alien Property Custodian paying us out of your former funds in his custody equivalent in dollars at March fifteenth nineteen seventeen rate of eleven eighteen. If you agree wire us to that effect and we will send you necessary papers to be filled out and signed by you. This will obviate lawsuit which we otherwise will be compelled to institute."

The cable was not understood by the bank, and on August 12, 1919, it sent plaintiffs this reply:

"Your cable regarding our consent to custodian incomprehensible wire details and reasons and transactions concerned."

No particular attention seems to have been paid to the message, and the bank soon proceeded to exchange the kronen of plaintiffs' old account, which had ceased to be legal tender in Austria, into a new issue of kronen. Protest was made to this action, and about April 1, 1920, the bank reestablished the old account. This being done, the proceeds were deposited in court pursuant to the section of the Austrian Civil Code, heretofore quoted. Plaintiffs were given the privilege to order the deposit withdrawn, and to again establish the account in new kronen upon the bank's books. This privilege was never exercised.

Upon this evidence, and upon the stipulation of facts, it is difficult to arrive at a conclusion as to the exact date upon which plaintiffs' cause of action arose. It may be said, for instance, that the cable of August 12, 1919, lacked some of the elements of a proper demand, and that for such reason liability should not be imposed as of August 12, 1919.

The stipulation of facts merely says that after July 14, 1919, and prior to the 1st day of April, 1920, "plaintiffs refused to accept the kronen on general deposit * * * as offered either in kind or in United States currency at the rate of exchange then prevailing. * * *" Since neither of the parties has chosen to introduce into evidence all of the correspondence passing between them over the period extending from August 12, 1919, to April 1, 1920, I am perhaps warranted in taking the former date as the day of demand. Although the cable lacked some of the characteristics of a legal demand, it was sufficient to apprise the bank that plaintiffs wanted their money —even now, the parties are no nearer an agreement as to what rate of exchange should be applied in converting the kronen into exchange than they were upon the day the cable was sent. When the message was received, the bank might well have offered the deposit as of the rate of exchange then prevailing. Not having done so, there is no injustice, I think, in holding that day to be the one as of which the account is to be settled, and I so hold.

[5] One question remains, and it is this: The bank argues that its deposit of April 1, 1920 with the Austrian court, pursuant to section 1425 of the Austrian Civil Code, should be regarded as a discharge of its obligation, and as casting the risk of further depreciation of the kronen upon the plaintiffs. Unless I am in error in having fixed August 12, 1919, as the day upon which plaintiffs were entitled to their deposit, there can be no merit in the bank's contention. Obviously, the deposit of April 1, 1920, may not have been commensurate with the extent of the bank's liability, as of August 12, 1919, and the bank, not having had an opportunity to receive kronen converted into dollars as of that date, cannot be called upon to suffer subsequent declines in such value.

Furthermore, the Trading with the Enemy Act (sections 3115½a–3115½j) affords plaintiffs a remedy by which they may here obtain such relief as they are entitled to receive. The extent and character of the relief to be afforded is not to be impaired or frustrated by what the debtor may have chosen to do pursuant to the provisions of a foreign statute. Should the present bill be dismissed, as is asked, plaintiffs would be required to collect their debt, whatever it may now be worth, at Vienna. Such result would not comport with the purpose of our own remedial legislation.

Plaintiffs may have a decree for the value of their deposit in dollars calculated at the rate of exchange prevailing as between kronen and dollars upon August 12, 1919, with interest from that date.