## CITY OF EAST CLEVELAND v. FIDELITY & DEPOSIT CO. OF MARYLAND.

### No. 17669.

District Court, N. D. Ohio, Eastern Division.
Nov. 6, 1933.

Edward A. Binyon, of Cleveland, Ohio, for City of East Cleveland.

McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio (William B. Stewart, of Cleveland, Ohio, of counsel), for Fidelity & Deposit Co. of Maryland.

WEST, District Judge.

This is an action by the city of East Cleveland against the defendant, a bonding company, to recover upon a depository bond given under Gen. Code, § 4295, the amount remaining in the hands of the depository and which it refused to pay over on April 5, 1933. Jury was waived. The Chagrin Falls Banking Company was depository, and its refusal was based wholly upon the federal and state emergency legislation and orders issued thereunder early in 1933. Section 5, tit. 50 USCA, and section 95, tit. 12 USCA; Presidential Proclamations March 6 and 9, 1933 (12 USCA § 95 note); Executive Orders 6073 and 6080 (12 USCA § 95 note, and § 203 note); Ohio Gen. Code, §§ 710-107a and 710-88a; Exhibit B, order of superintendent of banks dated March 1, ordering Chagrin Falls Banking Company, pursuant to Gen. Code, § 710-107a, to suspend payment of liabilities of the bank except to the extent of 5 per cent. thereof; Exhibits G and H, appointment of F. A. Henry, conservator of said banking company, dated April 9, and his commission dated April 10. The Act of Congress, section 95, supra, prohibited the bank, which is a member of the Federal Reserve System, from transacting any banking business, with exceptions not material here, and provided a severe penalty for its violation. Ohio statute Gen. Code, §

710-107a, authorized the superintendent of banks to order the bank to suspend payment in any way of its liabilities to depositors and other creditors, with exceptions not material; and section 710-88a gave the superintendent power to appoint a conservator, whose numerous duties are laid down in the section.

■ I think there can be no doubt as to the validity of this legislation. In Sneeden v. City of Marion (C. C. A. 7) 64 F.(2d) 721, the headnote reads:

"Banking business is so intimately connected with public interest that Congress and Legislatures may prohibit it altogether, or may prescribe conditions under which it may be carried on."

My attention is directed to the decision of the Supreme Court of South Carolina dated May 11, 1933, the case of State ex rel. Zimmerman v. Gibbs, 172 S. E. 130. The court considered and sustained the validity of emergency banking legislation passed in 1933. One of the provisions of the law appears to prohibit the bringing of actions against the bank by any one, including depositors and stockholders. This was attacked as unconstitutional and depriving depositors of their property without due process of law and denying them the right of a speedy remedy in the courts. The court thought the extraordinary and serious conditions confronting the country justified the Legislature in temporarily suspending the rights of depositors and creditors. The following is a quotation from the opinion:

"It is hardly necessary to repeat what we have already indicated, that the act was intended to be only a suspension of certain legal rights enjoyed by the citizen in normal times, and such suspension can exist so long only as the necessity for it appears."

Defendant's claim in its answer is that the congressional and state legislation above cited has so changed the contract between the city and its depository bank as to entirely release the surety from its obligation. On argument, however, it admits that there has been no release but only a suspension of the city's rights and that up to this time at least, the defendant's liability on its bond has not been wholly discharged. However, it claims that the bond cannot be enforced against it until the banking restrictions which now prevent its principal from returning the deposit or any part thereof, are lifted. It cites a great many cases, most of them relating to the power of the government to interfere with private contracts during the recent war,

in support of its contention that governmental interference will either discharge or suspend the operation of a contract, as the circumstances require. But none of the cases involved the precise situation we have here. The question is not merely the effect upon the contract between the city and the bank but rather what was the direct or indirect result of the emergency acts and orders on the contract between the surety company and the city?

■ There are many instances in which the principal on a bond cannot be held liable on the main contract, but where the surety is, notwithstanding, held on the bond. 21 R. C. L. p. 995, § 44; Gates v. Tebbetts, 83 Neb. 573, 119 N. W. 1120, 20 L. R. A. (N. S.) 1000, 17 Ann. Cas. 1183; Backus v. Feeks, 71 Wash. 508, 129 P. 86, Ann. Cas. 1914C, 553. In a note to the last case it is stated:

"It is a well settled exception to the nonliability of a guarantor of the performance of an invalid contract that if the invalidity is the result of a personal privilege or disability of the principal obligor the guarantor is liable."

Also in 21 R. C. L. 974 it is said:

"But although the general rule is unquestionably that the extent of the liability of the principal debtor measures and limits the liability of the surety, an exception exists where the principal, when sued, takes advantage of a matter of defense which is altogether of a personal character, or where the extinction of the principal's obligation arises from a cause which originates in the law."

The reported cases seem to make no distinction between matters of defense of a personal character and those originating in the law. For example, the cases above cited from Nebraska and Washington concerned defenses which the defendant could insist upon or not. Of a similar nature are the defenses of infancy and bankruptcy. Yet they all originate in the law that a minor is not liable on his contract, that bankruptcy constitutes a complete defense, etc. The court has been to a good deal of trouble to learn whether the defense asserted here, which certainly originates and grows out of legislation and nothing else, is of that type of defense that is good against the principal but not against the surety on a bond. I have found no direct authority. But in the nature of things, if the defense here will release the bank from present liability, it has the same effect on the surety. It is in no

sense personal to the bank, although directed against the bank and not against the surety. The bank is forbidden to pay its depositors and creditors. It cannot say that it will or will not avail itself of this defense, in other words, that it will or will not, as it chooses, obey the law, for the law being constitutional and valid, it must obey. It is true the bond sued on unconditionally requires the bank to repay to the city the deposited funds with interest, and the contingency that has happened could have been provided against in the contract. It may be claimed that, if the enactment of this new legislation was fairly within the contemplation of the parties, the surety should respond. But the sole basis of the legislation is the unusual, perhaps unprecedented, situation which suddenly confronted the country last spring. Certainly the parties could not be expected to have had such an emergency in contemplation.

The general rule is stated in 21 R. C. L. at 974 thus:

"A cause of action can not exist against a surety, as such, unless a cause of action exists against his principal. This rule results as a corollary, from the very definition of the contract of suretyship, that the obligation of the surety being accessory to the obligation of the principal debtor or obligor, it is of its essence that there should be a valid obligation of such a principal, and that the nullity of the principal obligation necessarily induces the nullity of the accessory. And as a general rule the obligation of the surety, as such, cannot exceed that of the principal, it being said that it would be most unjust and incongruous to hold the surety liable, where the principal is not bound."

Another feature to be considered is that, if the defendant pays under this bond at a time when it is not legally bound to pay, the payment will be regarded as voluntary and cannot be recovered back from the principal. 21 R. C. L. p. 1098, 1099. The court must recognize the legal situation and the defendant's rights under the law of principal and surety. While defendant is a compensated surety, still it is a surety and entitled to a surety's rights. When this action was commenced, neither the bank nor the defendant was liable to suit and on that fact the case is decided.

■ Plaintiff's counsel claim that the demand made upon the bank was illegal. I do not agree to this. There is nothing in the law, including the new legislation or orders under it, which forbids a depositor making demand on a closed bank. Demand may be ineffectual though not illegal. Defendant relies on Zimmerman v. Miller (D. C.) 2 F.(2d) 629. In that case the demand which was made upon the Austrian bank was said to be one that could not lawfully be made. But that was probably because such a demand would violate the nonintercourse requirements of the war situation. By virtue of a section of the Trading With the Enemy Act, demand might lawfully have been made upon the alien property custodian.

■ I do not regard the financial condition of the Chagrin Falls Bank or the fact that it has made no attempt or at least no successful attempt to open for business, as in any way material. Counsel for the city insists that the real reason why the deposit was not repaid was that the bank did not have the funds and that the emergency legislation had nothing to do with it. Also that the failure of the bank to secure the lifting of the orders is equally a cause of nonpayment.

These claims are of no significance; for in any event the law prohibits payment by the bank, and the law must be obeyed. It must be obeyed even if it is being badly administered, so that the bank is closed when it should be open. The defendant is not at this time liable, for which reason it is entitled to judgment in its favor. The court wishes it made plain that defendant has not been completely discharged and will be subject to suit whenever the bank is.