## DAVIES et al. v. LAHANN et al.

### No. 2937.

Circuit Court of Appeals, Tenth Circuit.

Nov. 10, 1944.

Rehearing Denied Dec. 20, 1944.

A. T. Hannett, of Albuquerque, N. M. (M. C. Mechem, of Albuquerque, N. M., on the brief), for appellants.

John C. Watson, of Santa Fe, N. M. (A. H. Hudspeth, of Carrizozo, N. M., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Adele Lahann and others brought this action against R. C. Davies and The Employers' Liability Assurance Corporation to recover on a bond. It was alleged in the complaint that plaintiffs, together with Pauline Lahann, since deceased, executed and delivered to The Carrizozo Mining Company a lease contract covering certain mining claims in New Mexico; that the Mining Company assigned the contract to Davies; that thereafter Davies, as principal, and the Assurance Corporation, as surety, executed the bond, conditioned upon the faithful performance of the contract; and that Davies breached the terms of the contract by failing to make certain payments as and when due. A copy of the alleged contract and a copy of the bond were attached to the complaint. By answer, the defendants admitted the execution of the bond, but denied that it was executed conditioned upon the faithful performance of the lease contract pleaded in the complaint;

denied that the lease contract set forth in the complaint had ever been assigned to Davies; and pleaded affirmatively that the lease contract had never been signed by the Mining Company, and that its signature thereto was a forgery.

It appeared at the trial that Judge Hudspeth represented the owners of the mining property in certain negotiations relating to the execution of the lease, E. C. Iden, an attorney at law, acted for the Mining Company, and Joseph L. Smith, an attorney at law, represented Davies in respect of the assignment. A. P. Feeney apparently had some contact or connection with the Mining Company but its exact nature is not made clear in the record. Feeney requested Hudspeth to prepare a lease from the owners to the Mining Company. He suggested that the instrument be sent to him and that he would forward it to the interested parties for execution. On receiving the draft of the contract, Feeney took it to Iden. After consideration, Iden wrote Hudspeth suggesting changes. One change was that instead of the contract providing for a minimum production of 4,000 tons per month, it provide a minimum average of 1,000 tons per month, but not less than 12,000 tons during any six months' period. Hudspeth replied that he agreed to the changes, with certain qualifications. Iden then prepared a redraft of the contract, dated June 8, 1942. It provided among other things that the lessee should commence mining ore within thirty days from the delivery of the lease, should mine not less than 1,000 tons per month, and should pay the owners a royalty of twenty-five cents per ton, payable monthly, but it failed to provide that not less than 12,000 tons should be produced during any six months' period. It further provided that the lessee should keep the premises free and clear of laborers' and materialmen's liens, and that the lessee should furnish a surety bond conditioned upon performance of the agreement. Iden mailed the redraft to Hudspeth. Hudspeth forwarded it to the owners for execution. But before forwarding it, he inserted an additional provision which provided that if the royalty on the ore mined prior to January 1, 1943, should be less than $3,000 the lessee should pay the difference in cash, and at the end of each semi-annual period thereafter should in like manner pay the sum necessary to bring the total royalty for the preceding six months period up to $3,000. By letter to Iden, Hudspeth called attention to the omission in respect to the minimum of 12,000 tons during each period of six months and stated that he had inserted the additional provision, quoting it. After the contract had been executed by the owners, Hudspeth delivered it to Iden. Iden's secretary typed into the unexecuted office copy in his file the signatures and acknowledgments of the owners, but she failed to note in the copy the provision which Hudspeth had inserted in the original. Iden mailed the contract to the secretary of the Mining Company for execution. It came back to Iden purporting to have been executed by the corporation, acting through its vice-president and its secretary; and Iden later transmitted it to Hudspeth.

It further appeared at the trial that at the time Iden prepared the redraft or soon afterwards, he exhibited it to Davies and delivered a copy of it to him to be passed upon by his attorney; and that at about the same time, Iden prepared an assignment of the lease from the Mining Company to Davies. The assignment provided for an overriding royalty to the Mining Company, and further provided that Davies should furnish the surety bond required by the original contract. The assignment was dated June 10, 1942, and Davies executed it on or about that date. The Mining Company executed it about six days later. It was executed by both parties with knowledge that the lease had not been executed but in the belief that it would be executed later. Sometime after the assignment was executed, Smith called at the office of Iden and inquired whether the lease had been executed by the owners of the property, was advised that they had executed it, and was furnished the copy from Iden's file bearing the names in type of the owners. The purpose in making the inquiry and in obtaining the copy was in connection with the execution of the bond. Neither the copy furnished Smith nor the copy attached to the application for the bond contained the provision which Hudspeth had added. Soon after the unsigned lease was assigned to Davies and he executed the assignment, he went into possession of the property and mined ore from it. During the period prior to January 1, 1943, he paid the owners $465.21 as royalty. But he did not make any subsequent payments, and he ultimately abandoned the premises because the op-

erations were not profitable. Had he complied with the terms of the lease, as changed and modified by the provision which Hudspeth inserted in it, he would have paid to the owners additionally, $2,-534.79 on January 1, 1943, and $3,000 on July 1, 1943.

The court found that the Mining Company did not execute the lease; that the name of the corporation was forged to it; that Davies did not have any knowledge of the change or modification which Hudspeth made in the contract, and never agreed to it; that he honestly and in good faith went into possession believing that the lease would be executed in exactly the form in which Iden prepared it and furnished the copy to Davies; that he continued in such possession believing that it had been executed in that form; and that the bond was executed in the belief that the lease had been executed by the owners and by the Mining Company exactly as prepared by Iden. Entertaining the view that by accepting the assignment Davies adopted the contract and gave the bond to carry out its provisions, the court entered judgment for plaintiffs for the amount of the bond, from which defendants appealed.

■ It is to be borne in mind from the outset that this is not an action on the contract, either for reformation, specific performance, damages for breach, or otherwise. Neither is it an action for the recovery of royalty, on the basis of express contract price or in quantum meruit. It is a suit on the bond. And the condition of the bond was the faithful performance of a contract entered into by the owners of the property, as parties of the first part, the Mining Company, as party of the second part, and assigned by the Mining Company to Davies. The bond was a collateral engagement intended to insure performance of a primary obligation specifically described in the bond. And the primary obligation was a contract between the owners, as lessor, the Mining Company, as lessee, and Davies, as assignee. But there was no contract between the owners of the property and the Mining Company. For lack of execution by the Mining Company, no such contract ever existed. In short, the collateral engagement was expressly conditioned for the performance of a particularly described primary obligation, and there never was any such obligation, then or thereafter. Ordinarily, where no effective primary obligation exists, a

collateral engagement underwriting it is not operative or enforceable. Merchants' National Bank v. Citizens' State Bank, 93 Iowa 650, 61 N.W. 1065; Yangtsze Rapid S.S. Co. v. Deutsch-Asiatische Bank, 9 Cir., 59 F.2d 8. A contract of guaranty may be enforced even though the primary obligation is invalid, if the guaranty is a separate and independent undertaking binding the guarantor apart from the primary obligation. Bank of Plant City v. Canal-Commercial Trust & Savings Bank, 5 Cir., 270 F. 477; Border National Bank v. American National Bank, 5 Cir., 282 F. 73, certiorari denied, 260 U.S. 701, 732, 43 S. Ct. 96, 67 L.Ed. 471. But the bond on which recovery was had in the court below was not an independent undertaking of that kind, separate and apart from the primary obligation. Instead, it was essentially a collateral engagement conditioned upon performance of a primary obligation. And it may be conceded, without deciding, that a cause of action will lie on a bond to underwrite performance of a lease covering real property, even though the lease is voidable but not void for lack of being acknowledged. Backus v. Feeks, 71 Wash. 508, 129 P. 86, Ann.Cas.1914C, 553. But this is not a case of that kind. Here there was no contract between the original parties—valid, voidable, or void.

■ It remains to inquire whether Davies adopted the contract while it was in process of execution and became obligated to perform its terms and conditions, even though it never became effective as between the owners of the property and the Mining Company. While ratification and adoption are sometimes used interchangeably in the decisions, there is a distinction between the two. Ratification is in essence the recognition or confirmation of that which has been done without authority, or done insufficiently. Whether accomplished by express or implied means, it is the confirming or sanctioning of a previous unauthorized act, or an act insufficiently done. More often than otherwise, it arises in respect of an act or contract of an agent, done or purported to be done for a principal who subsequently sanctions or confirms it. And when effected, it relates back to the date of the act or contract. Adoption in its primary significance is the taking and receiving as one's own that to which he bore no prior relation, colorable or otherwise. It is one appropriating to himself something which another previous-

ly did in his own, behalf. It frequently arises in respect to a contract made by promoters who propose to organize a corporation, and the corporation after being formed takes over the contract as its own. It is somewhat in the nature of a novation. But here Davies never intended or undertook to assume as his own the lease contract in its altered and modified form. At the time he accepted the assignment, at the time the bond was executed and delivered, and at the time the ore was mined, he did not know that the contract had been altered and modified by the insertion of the new provision. Neither Davies nor the surety on the bond had any knowledge of the change or modification until after Davies had abandoned the property. There was no meeting of minds between Davies and the Mining Company, or between Davies and the owners, that Davies should take over at his own and appropriate unto himself as lessee the contract in its changed and altered form. The assignment was executed and accepted, and the bond was executed and delivered under mistake of material fact. The requisite mutuality of assent was wanting. And a contract executed under mutual misapprehension as to a material fact going to the essence of the contract may be voided, provided no right has been acquired in due course. United States v. Golden, 10 Cir., 34 F.2d 367.

In their effort to sustain the judgment, appellees place strong reliance upon Levy v. Continental Supply Co., 101 Okl. 144, 223 P. 833. They say that the case is squarely in point on the question of adoption. There Continental Supply Company and Union National Bank were joint owners of two oil leases and certain other property. Green, purporting to be the agent of Continental Supply Company, executed a contract in the name of the company for the sale of the leases and other property to Levy. The action was to recover the value of the oil included in the contract. Continental Supply Company denied the authority of Green to represent it in the execution of the contract. But there the parties proceeded to carry out the contract. One boiler was missing, and the cashier of the bank, acting for the supply company and the bank, entered into a supplemental agreement with Levy in which specific reference was made to the earlier contract executed by Green. And later the supply company and the bank, each acting by its proper officers, executed separate assignments of the lease to Levy; and each as-signment made specific reference to the contract of sale executed by Green, and to the supplemental agreement executed by the cashier of the bank. The court held that in those circumstances it was immaterial whether Green was the authorized agent of the Continental Supply Company. But in that case the corporation, with full knowledge of all the material facts, recognized the unauthorized contract and took the benefits flowing from it. No comparable facts are present here.

Estoppel by acceptance of benefits is urged. It is said that Davies represented himself to be the assignee of the contract; that he assumed its obligations, whatever they might be; that he enjoyed all the benefits of it for a year; and that he is therefore estopped. But the acts, conduct, and representations relied upon to constitute estoppel occurred without knowledge on the part of Davies that the contract had been modified and changed in material respect after Iden exhibited it to him. One of the essential elements of estoppel by representation or conduct is that the representation must have been made or the conduct must have taken place with knowledge of all the material facts. State National Bank of El Paso, Texas v. Cantrell, 47 N.M. 389, 143 P.2d 592. That element is absent here. At the time Davies accepted the assignment in writing, and at the time the bond was executed and delivered, he believed that the contract was in process of being executed in the form originally prepared. He did not know that it had been changed or modified. And he did not represent that he was the assignee of the contract, as changed and modified; neither did he act under it with knowledge of the change and modification.

Finally, it is urged that Davies did know or should have known of the change or modification in the contract. But the court expressly found that he did not have such knowledge and that he was not guilty of negligence, fraud, or other misconduct in his dealings with the owners of the property or their agents. The evidence and the inferences fairly to be drawn from it support the findings. The findings are not clearly erroneous, due regard being had for the opportunity of the court to observe the witnesses, appraise their credibility, and determine the weight to be given to their testimony. Therefore the findings cannot be disturbed on appeal. Prudential Insurance Co. v. Carlson, 10

Cir., 126 F.2d 607; Newell v. Phillips Petroleum Co., 10 Cir., 144 F.2d 338.

The judgment is reversed and the cause remanded.