292 P.2d 327

E. S. RAYMOND and Ed Amonett, d/b/a Amonett Safety Lane Body Shop, Plaintiffs-Appellees,

v.

Ralph E. GAY and Commercial Credit Corporation, a corporation, Defendants,

Commercial Credit Corporation, Appellant.

No. 5977.

Supreme Court of New Mexico.

Dec. 22, 1955.

Rehearing Denied Jan. 31, 1956.

Schauer & Stiff, Hervey, Dow & Hinkle, Roswell, for appellant.

Frazier, Cusack & Snead, Roswell, for appellees.

COMPTON, Chief Justice.

Appellees, plaintiffs below, brought this action against the defendant Gay and the appellant to recover the balance allegedly due for labor and material furnished in repairing an automobile belonging to Gay. Gay was not served with summons and the cause was dismissed as to him. Judgment was awarded appellees for the balance due, and Commercial Credit Corporation appeals.

The pertinent finding is as follows:

"14. That the Defendant Commercial Credit Corporation is estopped to deny liability to the Plaintiffs in this cause, and Plaintiffs are entitled to judgment against Defendant Commercial Credit Corporation in the sum of $761.62, being the deficiency remaining due upon the repair bill after application of the proceeds of sale, and after a deduction of $75.00 therefrom, being the amount assumed by the Defendant Gay as his sole responsibility."

There is no material conflict in the evidence. Gay's automobile was covered by a lien to secure an indebtedness due Commercial Credit Corporation. At the time it was insured against loss by collision by Hartford Fire Insurance Company. On March 23, 1953, the automobile was damaged in a collision, necessitating labor and repairs amounting to $2,036.62. Gay took it to appellees' garage for estimates and repairs, after which notice of loss was given to the insurance carrier. On the same day, the insurance carrier directed Paul D. Lee, an adjuster for General Adjustment Bureau, to obtain estimates. Appellees' estimate of $2,036.62 was accepted by the carrier, less deductions of $75, which Gay agreed to assume and discharge. Thereupon, appellees proceeded to repair the automobile pursuant to contract with Gay. The insurance carrier made its draft for $1,961.62, payable to Gay and appellant jointly. Thereafter, on May 13, 1953, appellant sent its draft for said amount to Lee, the adjuster, with instructions to deliver the same to appellees upon completion of repairs, which information was conveyed to appellees by Lee.

Parts for the automobile at the time were difficult to obtain and it became apparent to all that it could not be completely repaired until the latter part of August. The draft was a 60-day draft, which by its own terms was voided on July 11, 1953. Lee advised appellant that repairs could not possibly be completed by that time and asked for further instructions. On June 26, 1953, appellant replied and directed Lee to return the draft so that a new one could be issued. Incidentally, a new draft was never issued. Thereafter, on August 27, 1953, appellant notified appellees directly that Gay had repudiated the contract and that the automobile was being abandoned by it in their possession. Whereupon, appellees sold the automobile to satisfy their lien, the sale netting $1,200, leaving a balance due of $761.62, for which judgment was awarded.

The defense to this action rests upon the claim, (a) that no effective primary obligation existed requiring performance of the contract by appellant, and (b) there was no ratification of the contract. Even so, we are relieved of the necessity of discussing these defenses. Under the doctrine of adoption, appellant is obligated to perform its terms and conditions. With full knowledge that Gay had repudiated the contract, and while it was in the process of execution, appellant adopted the contract as its own. Compare Davies v. Lahann, 10 Cir., 145 F.2d 656; Barker v. Berry, 8 Mo.App. 446; McArthur v. Times Printing Co., 48 Minn. 319, 51 N.W. 216, 31 Am. St.Rep. 653. On July 16, 1953, appellant wrote Lee that Gay had turned the automobile back to it and expressly directed him to contact appellees and arrange for the completion of repairs as quickly as possible. He complied therewith, and the automobile was finally repaired pursuant to direction, the latter part of August thereafter.

Lee, the adjuster, testified:

"Q. Did you return the draft number 2780 to the Commercial Credit Corporation? A. Yes, sir.

"Q. When did you return it to them? A. On July 1, 1953.

"Q. Following July 1, 1953 was any check ever issued by Commercial Credit Corporation to you? A. There was not.

"Q. Did you receive a letter from Commercial Credit Corporation under date of July 16, 1953 with reference to this loss? A. Yes, sir.

"Q. Will you read into the record the substance of that letter? A. On July 16, 1953 I received a letter from Mr. K. Harlan, Unit Manager of Commercial Credit Corporation in Oakland, California, advising me that Mr. Gay's car was being repaired by Amonett Safety Lane Body Shop, * * * that Mr. Gay had decided to turn the car back to Commercial Credit Corporation * * * and to please contact Amonett Safety Lane Body Shop and

arrange for completion of the repairs as soon as possible. * * *

\* \* \* \* \* \*

"Q. What did you do in response to the letter of July 16, 1953? A. When I received the letter which was on July 19, 1953, I informed Amonett Safety Lane Body Shop of the substance of it * * *"

The finding has substantial support in the evidence. Accordingly, the judgment will be affirmed, and it is so ordered.

LUJAN, SADLER and KIKER, JJ., concur.

McGHEE, J., not participating.