No. 31,032.

THE MCNAGHTEN LOAN COMPANY, *Appellant,* v. W. F. SANDIFER, *Appellee.*

(20 P. 2d 523.)

Opinion filed April 8, 1933.

*Robert Garvin, Evart Garvin* and *Morris Garvin,* all of St. John, for the appellant.

*D. H. Donnelly,* of Stafford, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The main question involved in this appeal is the extent of the liability of one who indorses a promissory note without recourse when one of the signatures on the note is a forgery. The trial court held that the indorser was liable, but only to the extent of a possible recovery from the party whose name was forged. Both parties appeal.

The plaintiff loan company, after having sued the makers of a note for $1,230 and failed to collect anything thereon, brought this action against the party who had indorsed the note without recourse. Attached to the petition was a copy of the note, which embodied in its terms a chattel mortgage by the makers thereof, Roscoe C. Charles and his wife, Gladys E. Charles, upon a two-thirds interest in a growing crop of wheat and certain household goods belonging to them.

The petition recited at length the transaction of a sale of land by plaintiff company to defendant wherein this combined note and mortgage was indorsed to plaintiff as part of the purchase price, and to the petition was also attached a copy of the land sale contract, containing the following qualified guarantee of the notes indorsed by defendant:

"While second party is not to guarantee these notes, he is to aid first party and give his coöperation and information which first party may need in the collection thereof, either in or out of court. Subject to the following exceptions: second party agrees that these notes are *bona fide* with genuine signatures and given for valuable consideration."

The petition also alleged that defendant knew when the note was

made to him by Roscoe C. Charles that the name of the wife had been signed by her husband without her knowledge or consent, and also recited the history of the earlier suit on the note against the makers thereof and the failure to realize anything in the collection of the note and judgment thereon against the husband.

The answer of the defendant was a general denial and an allegation of a mutual mistake in the written contract of sale attached to the petition, and the knowledge of plaintiff company, before consummation of the land deal and acceptance of the note, that the signature of the wife on the note had been forged by her husband. The defendant, by way of cross petition, alleged that misrepresentations as to value of land sold to him had been made by plaintiff and asked damages therefor.

The trial court held defendant was liable in damages to the plaintiff for breach of his warranty, but only to the extent of the ability of plaintiff to have collected on the note and chattel mortgage if the signature of the wife had been genuine, which it found was limited to the value of the household goods included in the mortgage, which without her signature were exempt, and were found to be worth $300. Other findings were in favor of the plaintiff, and judgment was rendered against defendant for $300 with interest, instead of $1,230. Plaintiff appeals. Defendant has filed a cross appeal.

Plaintiff claims the trial court erred in not awarding it a judgment for the face value of the note and in not holding the indorser liable for the consideration paid him for the note by the plaintiff, the indorsee.

Appellant strongly reasons along the line of the liability of an indorser under the negotiable instruments statute, which liability the defendant took definite pains to avoid, both by the inclusion of the paragraph above quoted in the real-estate contract and also by using in the indorsement of the note the words "without recourse," following his name, which make it a qualified indorsement under R. S. 52-606, which is as follows:

"Every person negotiating an instrument by delivery, or by a qualified indorsement, warrants: (1) That the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of the instrument or render it valueless. . . ."

It was said by Judge Brewer, in the case of *Challiss v. McCrum*, 22 Kan. 157, before the statute above quoted was enacted, where

these two words were used in connection with the transfer of the note to another:

"Of course no action will lie on the indorsement, for by his written contract Challiss expressly declines to assume the liabilities of an indorser. If sustainable at all, it must be as against him as a vendor, and not as an indorser, and upon the doctrine of an implied warranty." (p. 160.)

Further in the opinion it is stated that there is an implied warranty of the genuineness of the signature and that there is no warranty of the solvency of the parties. Our statute, above quoted, imposes other warranties, but here we are only concerned with the one that the instrument is genuine and in all respects what it purports to be, and, as stated in the contract, "that the notes are *bona fide* with genuine signatures."

In the case of *Kaill v. Bell*, 88 Kan. 666, 129 Pac. 1135, it was said:

"Even in the case of commercial paper indorsed without recourse, the vendor impliedly warrants that the instrument is a valid obligation of the kind it purports to be." (p. 668.)

Such an indorser, under this statute and under the special contract in this case, becomes merely a vendor with an implied warranty under the statute, and express warranty under his definite contract that the signatures to the note were genuine, and is liable in damages to the plaintiff for such amount as it has suffered by reason of the breach of such warranty.

Had there been no breach of warranty and both signatures to the note had been genuine, what could the plaintiff have recovered? The finding is that both husband and wife are insolvent and execution proof. The plaintiff took its chances on this and does not now claim that defendant is in any way liable because of the inability of the makers of the note to respond. Should the plaintiff profit in the transaction by reason of a breach of the warranty? That has never been the rule with damages. It should be placed just where it would have been had there been no breach. If there should be any question as to this general rule under the statute there can be no possible question under the specific statement of his contract with the plaintiff that "While second party is not to guarantee these notes he is to aid first party and give his coöperation and information which first party may need in the collection thereof, either in or out of court."

In Bigelow on Bills, Notes and Checks, 3d ed., at page 216, an

indorser without recourse is spoken of as a vendor. It is there said that the liability of the vendor is not on the paper itself, the warranties are in analogy to warranties on the sale of chattels, they are collateral undertakings, they refer to conditions of fact existing or not existing at the time of the transfer without relation to the maturity of the instrument.

The situation under a qualified indorsement is described as follows in 3 R. C. L. 1155:

" 'Without Recourse.'—If the transferor of a bill of exchange or promissory note desires to escape the liability expressed by the contract of indorsement, he has available one sure means; by indorsing in the form of a qualified indorsement. The words 'without recourse' accompanying an indorsement clearly indicate that the party making the transfer does not intend to assume the position of an unconditional indorser, or to incur any liability if the note is not paid at maturity upon due demand, or even if all the parties to the paper should prove to be wholly insolvent. No action will lie on the indorsement, for by his written contract the indorser expressly declines to assume the liability of indorser. The indorsement effects a transfer of the title to the paper without imposing the liability of an indorser. In this particular the negotiable-instruments law declares that 'a qualified indorsement constitutes the indorser a mere assignor of the title to the instrument.' "

The same matter is described in 8 C. J. 392 as follows:

"One who transfers a bill or a note impliedly warrants certain things and is liable for breach of warranty in a proper case. This liability is wholly independent from any liability as indorser and exists, although the instrument is indorsed 'without recourse,' except as to the solvency of the parties."

Several cases are cited by appellant to show that the liability of such vendor is for the face value of the instrument or the full amount paid for the note, but a plain distinction and difference exists between the facts in those cases and the case at bar. The case of *Smith v. McNair,* 19 Kan. 330, was where forged school-district bonds were sold by the vendor and he was held to be liable for what he received for them. The case of *Robertson v. Talley,* 84 Kan. 817, 115 Pac. 640, was where the vendor innocently delivered a forged deed to a purchaser and was held liable for the full amount paid therefor without deducting the amount the vendor had paid for the deed from one he mistakenly believed to be the owner of the land. The case of *Kaill v. Bell,* 88 Kan. 666, 129 Pac. 1166, was where the vendor gave for the purchase of land invalid school-district orders and was held liable on his implied warranty for the full value of them. The Challiss case, supra, was a usury case, and only

part of the note was affected by that defense or invalidity, which shows the distinction between it and the three just previously mentioned, where the invalidity applied to the entire property and did, in fact, leave no partial salvage.

Here the very fact that defendant declined in writing to guarantee this note showed that the solvency of the makers was questionable, and his offer to aid plaintiff in collecting it made its value from that very moment uncertain. The breach of warranty only lost the plaintiff what could have been recovered if the wife's signature had been genuine as represented. Plaintiff was knowingly taking his chances, with the promised aid of the defendant in possibly collecting something on this note of questionable value. Its officers speculated by taking the note as part of the consideration for the farm sold to the defendant at a greatly enhanced price.

Damages are defined, without any of the many qualifying features thereof, as a just compensation or reparation for a loss or injury sustained. (17 C. J. 716.) The court found that the maker of the note and his wife own and reside on a quarter section of land in Stafford county, that the household furniture described in the note was worth $300, and that the judgment obtained by plaintiff against the husband was of little or no value. If, as stated above, the breach in such cases is to be regarded as a breach of warranty in the sale of chattels, the measure of damages as stated in 55 C. J. 866 is—

"Where there has been a breach of a warranty in a contract of sale, the buyer can be compensated in damages. . . . The buyer is entitled to recover the actual damages he has sustained, both general and special, which are the natural and direct or proximate result of the breach, and which may reasonably be regarded as within the contemplation of the parties at the time of the sale as the probable consequence of a breach."

In *Isaacs v. Motor Co.*, 108 Kan. 17, 193 Pac. 1081, it was held:

"The machinery purchased being defective and not in compliance with the warranty given, the plaintiffs were entitled to recover as damages the difference between the value of the machinery as warranted and its value as delivered, and also for the reasonable and necessary repairs made by the plaintiffs in a *bona fide* endeavor to make it work." (Syl. ¶ 4.)

We think the plaintiff had no right whatever to recover from the defendant the face value of the note when it is found it could not have collected that amount if the signature of the wife had been genuine, and at most can recover the value of the household goods which were exempt without the signature of the wife to the note.

There may be some question as to the negotiable character of the note here under consideration, because of the possibility of the provisions thereof pertaining to the security on chattels being in effect a promise to do an act in addition to the payment of money restricted by R. S. 52-205, but that point is not here raised, and perhaps because, aside from the implied warranty under the statute (R. S. 52-606), there is here the express warranty in the written contract.

Appellee strenuously insists that plaintiff should not even recover the $300 as the value of the exempt household furniture, because plaintiff was estopped by reason of having been informed of the forgery before it delivered the deed to the defendant and closed the land deal, citing R. S. 52-502 and 52-504 and *Callahan v. Bank,* 113 Kan. 577, 215 Pac. 831. The last section above cited is as follows:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

These sections do not apply to a case of this kind, because, as stated before, this is not an action upon a negotiable instrument. Likewise the Callahan case, above cited, was an action to cancel certain notes and it was decided upon the strength of the above sections and succeeding ones in the same article.

The court in the case at bar found that the contract was entered into by plaintiff in good faith, but before the deed was delivered its officers learned that the wife claimed her signature to the note was a forgery. The record also shows that the defendant knew of this claim before the deal was closed and was threatening the plaintiff with an action if the contract was not complied with by the plaintiff at once. We do not think this comes within the requirements for estoppel. The act of the plaintiff did not in any way mislead the defendant. He was in no way prejudiced by the closing of the deal. (See *Dent v. Smith,* 76 Kan. 381, 92 Pac. 307; *Jacquart v. Jennings,* 118 Kan. 224, 235 Pac. 101; and *In re Town of Olsburg,* 118 Kan. 440, 235 Pac. 845.)

Appellee claims the court erred in not giving credit for the value of a certain radio mentioned in the chattel mortgage and also in finding against him on his cross petition for damages on account of representing the farm to have been worth $10 per acre more than the court found it to be worth, but the court found that, while such representations were made, the contract provided each party was to

act upon his own judgment and that the defendant had personally visited the land before executing the contract.

We think the findings of the trial court are supported by the evidence and the conclusions of law are proper.

The judgment is affirmed.