No. 31,530

ATLAS ACCEPTANCE CORPORATION, *Appellant*, v. DAVIDSON BROTHERS MOTOR COMPANY et al., *Appellees*.

(30 P. 2d 304.)

Opinion filed March 10, 1934.

*T. F. Railsback,* of Kansas City, for the appellant.

*Arthur J. Mellott* and *Hugh E. Brownfield,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Davidson Brothers were automobile dealers in Kansas City. In 1929 the defendant, E. T. McAbee, purchased a Hudson automobile from them for the sum of $1,375. McAbee was given an allowance of a small sum for an old car which was traded in, paid a small amount in cash and there remained a balance due Davidson Brothers of $1,258. McAbee asked for a credit

to that extent, and it was granted to him after an investigation by the Atlas Acceptance Corporation, to which the Davidson Brothers applied in order to carry the loan. After it had investigated McAbee and his wife, it informed Davidson Brothers that it would purchase the note if the wife of McAbee also joined in the execution of it. The note was then obtained with a chattel mortgage on the automobile and appeared to have been signed not only by McAbee but by Ethel McAbee, his wife. Davidson Brothers gave a restricted indorsement of the note to the Atlas Acceptance Corporation. Thereafter it found that the signature of Ethel McAbee had been forged. There was a delay in payments made by McAbee, and when the automobile was taken by him into New York state, the plaintiff, relying on the terms of the chattel mortgage, repossessed itself of the car in New York and returned it to Wyandotte county, at an expense of $265.22. The car was later sold at public sale for the sum of $850, and thereafter the Atlas Acceptance Corporation brought this action against E. T. McAbee and the Davidson Brothers to recover the sum of $604.20, including the expense incurred in returning the automobile from New York.

Issues were joined, and when the case came on for trial before the jury the counsel for the plaintiff made his opening statement of the facts to the jury, after which counsel for defendants, Davidson Brothers, the qualified indorsers of the note and chattel mortgage, moved for judgment on the pleadings and the opening statement of counsel. The trial court held that on the pleadings and opening statement, the writings, including the note and chattel mortgage, were to be construed together and that Davidson Brothers, to whom the note was given and who transferred it to plaintiff "without recourse," were qualified indorsers, and as the action was brought on the instrument, the Davidson Brothers were no more than mere assignors of the title to the note. The following is a copy of the note:

"$1258.95                    Kansas City, Mo., August 27, 1929.

"For value received, I (we) promise to pay to the order of Davidson Bros. Motor Co. twelve hundred fifty-eight and 95/100 dollars at the time or times stated on the schedule payments hereon, at the office of the Atlas Security Company, Kansas City, Mo., with interest from maturity until paid, at the rate of eight per cent per annum. The interest on each installment and the interest on the unpaid balance of the principal sum are to be paid at the maturity of each installment. In the event the signer defaults in the payment of any installment hereof or interest, when due, the full amount re-

maining unpaid shall, at the election of the holder, become due and payable. The sureties, indorsers and (or) guarantors hereon hereby waive demand, protest, notice, diligence and suit and also agree to all of the above the same as the maker. (Signed) E. T. McABEE, ETHEL McABEE."

(Payments were made each month, first payment was $69.97 and 17 payments were for $69.94 each.)

In his opening statement counsel for plaintiff stated the issues as presented by the pleadings, that the evidence would show that a proposal to buy a car from Davidson Brothers had been made by E. T. McAbee, that they turned it over to the plaintiff, Atlas Acceptance Corporation, who investigated the ability and resources of the proposed purchaser and found that Mrs. Ethel McAbee had been employed in the Federal Reserve Bank of Kansas City for the past eleven years, that at one time McAbee had bought another car and that his wife had made payments on it, and recommended acceptance of the proposal in case the note was signed by Mrs. McAbee. The sale was then made. A chattel mortgage on the car was also taken. One payment was made on the debt. Since that time and before the trial Mrs. McAbee died. It was then found that the wife had never signed the note, that her husband, in order to effect the sale, had another woman sign his wife's name to the papers, that plaintiff had placed reliance upon the wife's signature, but soon found that E. T. McAbee, the purchaser, had gone to New York and taken the car with him without the consent of the mortgagee and contrary to a provision of the mortgage that the car would not be taken out of this state without its consent. The car was found in New York and brought back to Kansas City at an expense of $226.84. It was put up at competitive sale and bought in for about $800, and after paying the expenses of the return of the car there was still due $604.20, for which judgment was asked against McAbee and the Davidson Brothers Motor Company.

In its petition plaintiff alleged that before the note was indorsed and transferred by the Davidsons to plaintiff, they knew that the note had not been signed by Mrs. McAbee, the wife, and knew that her signature thereto was not genuine. They knew that the instrument was not genuine as to the maker, Ethel McAbee, and knew that the person who signed her name had no capacity to do so. All of this was contrary to the warranty in the transfer of the note to plaintiff. A copy of the mortgage was set forth. On the facts stated

in the pleadings and in the opening statement, judgment was asked against all the defendants. The Davidsons knew that the note had not been signed by the wife of McAbee, knew that her signature was not genuine and that they indorsed and transferred the note prior to the maturity thereof in this form:

"For value received, the within note and mortgage and all the right, title and interest of the mortgagee therein and hereunder are hereby sold and assigned and transferred to the Atlas Acceptance Corporation and to its successors and assigns this 29th day of August, 1929.

Without recourse
(Signed) DAVIDSON BROS. MOTOR CO.
By E. S. DAVIDSON.
Without recourse
ATLAS ACCEPTANCE CORPORATION
By T. PESSMAN, Treas."

After stating the facts judgment was demanded against McAbee and the Davidsons, as partners. The Davidsons then moved the court for judgment in their favor on the pleadings and opening statement and asked an opportunity to argue it. At the close of the argument the motion was sustained, the court stating:

"In the first place I believe that these two writings must be construed together. I am satisfied that this is not a negotiable instrument and this is not a commercial indorsement thereon; and therefore, I am forced to render judgment for the defendant, Davidson Brothers. If there is a liability against Davidson Brothers, I feel that it is not on the note, but for fraud—damages for fraud in presenting a note with a forged signature. Therefore, judgment will be rendered for the defendants, Davidson Brothers."

The motion for judgment on the pleadings and the opening statement of counsel for plaintiff was made by Davidson Brothers Motor Company and was sustained by the court, giving judgment in their favor. They claimed that they had acquitted themselves of liability on the note which they indorsed and transferred to the plaintiff without recourse. They concede that they are qualified indorsers of the note and cite *Challis v. McCrum,* 22 Kan. 157, to show that in an indorsement without recourse they expressly declined to assume the liability of an indorser and that the effect was to do away with an indorser's liability on the note and place them in the position of a vendor. That authority was announced before the negotiable-instruments act was passed. In that act, under which this action was brought, the legislature declared in specific terms that—

"Every person negotiating an instrument by delivery, or by a qualified indorsement, warrants: (1) That the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of the instrument or render it valueless; but when the negotiation is by delivery only, the warranty extends in favor of no holder other than the immediate transferee. . . ." (R. S. 52-606.)

Thus it is provided that a qualified indorser as well as one who negotiates by delivery specifically warrants four different propositions. He warrants that the instrument is genuine and is what it purports to be. Here, it was not genuine and was not what it purported to be. One of the signatures of a maker attached to the instrument was a forgery, and, further, Davidson Brothers warranted that they had no knowledge of anything which would impair the validity of the instrument, and yet the allegations of the petition are that Davidson Brothers knew that a maker's name was forged when the transfer was made. These warranties and promises of the payee are prescribed by the statute. While the payee purports to transfer it without recourse, it was a qualified indorsement, and the law itself attaches the warranty that the note was genuine and not a forgery, that it was signed by two makers, whereas it was in fact only signed by one of them and therefore it is not in all respects what it purports to be.

According to the petition that contract was broken when it was negotiated. When the payee indorsed the note as was done, it was the equivalent of writing over the name the words "without recourse," except that I am liable on such obligations as are specified in the statute (R. S. 52-606), and in such cases the holder may look to and recover from qualified indorsers. The statutory warranties of R. S. 52-606 apply to all transfers of those classes of paper; it says *every person* negotiating an instrument by delivery or qualified indorsement. As to these classes there are no exceptions, and evidently the design of the lawmakers was to cut off those defenses. (See *Foley v. Hardy,* 122 Kan. 616, 253 Pac. 238.) In effect the law writes the warranties into every transfer of a qualified indorser, and he cannot set aside the law nor make it ineffective. The restriction "without recourse," which qualified the transfer, is in fact the foundation for the mandatory warranties which the law writes into the contract of indorsement. (8 C. J. 395.)

Defendants cite and rely mainly on *McNaghten Loan Co. v.*

*Sandifer,* 137 Kan. 353, 20 P. 2d 523, a case relating to the sale of land in which a note was given, not signed by the wife, but her name was attached to it by the husband, and the case as submitted was on an averment that the transfer was not to guarantee the notes included in the transaction. The court disposed of it upon the validity of the sale of the land. Some reference was made to the rules in regard to negotiable paper and some language was used not in compliance with the views herein expressed, as, for instance, syllabus two and the corresponding part of the opinion, and to that extent it is not approved, but the case was determined on the conditions in the real-estate contract in which damages of $300 was allowed against the parties designated as the unguaranteed indorser of the note. It is not deemed to be controlling here. (See, also, *Rucker v. Hagar et al.,* 117 Kan. 76, 230 Pac. 70.)

So far as the disposition of this case is concerned, it was decided on a motion for judgment on the pleadings and the opening statement of counsel for plaintiff, which has been determined to be much the same as a demurrer, although it is not ordinarily used instead of a code demurrer unless the moving party confidently anticipates that final judgment must be rendered upon it.

"Of course, under the code, if a demurrer is sustained the defeated party can often amend so as to surmount the demurrer. Neither does a favorable ruling on a motion for judgment necessarily terminate a lawsuit; the gravity of the predicament of the defeated party may sometimes be overcome through the lenient discretion of the trial court. Before that discretion should be exercised in his behalf, however, the trial court should be well satisfied that the defeated party has in fact a meritorious defense. Before permitting a defeated party to 'mend his hold' by a new and different defense, after the insufficiency of his pleading, under a motion for judgment, has been ruled on by the supreme court—and when such new defense was not even hinted at in his earlier pleadings—the proffered amended pleading should be scrutinized more critically by the trial court than if the other party had never been put to the expense and annoyance of an appeal." (*Thresher Co. v. Nelson,* 106 Kan. 716, 189 Pac. 907; see, also, Dasslers Kansas Civil Code, 289.)

It follows that the ruling of the district court must be reversed and remanded for further proceedings. It is so ordered.