# The First Pennsylvania Banking and Trust Co. v. Montgomery County Bank and Trust Co.

*Smillie, Bean, Davis & Tredinnick,* for plaintiff.

*Wright, Mauck & Spencer,* for defendant.

FORREST, P. J., September 17, 1962.—Plaintiff, drawee of certain checks, having paid the checks upon presentment by a collecting bank, brought this action against the collecting bank on its warranty that the signatures of the payees on the endorsements are genuine: Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 4-207(2) (a). Plaintiff alleged that the payees' endorsements were forged, which was not denied by defendant.

Defendant answered plaintiff's complaint, alleging in new matter that the person who signed on behalf of the maker of the check intended the payee to have no interest in the instrument and therefore that the forged endorsement was "effective" under section 3-405 of the Uniform Commercial Code. . . .

This case arises under the Uniform Commercial Code of April 6, 1953, P. L. 3. Section 3-405 of the code, effective during the transactions herein, 12A PS §3-405 provided:

"(1) An indorsement by any person in the name of a named payee is effective if . . . (b) a person signing as or on behalf of a drawer intends the payee to have no interest in the instrument; . . .

"(2) Nothing in this section shall affect the criminal or civil liability of the person so endorsing."

The comment upon this section of the Uniform Commercial Code is, inter alia, as follows:

"3. . . . The test stated is not whether the named payee is 'fictitious', but whether the signer intends that he shall have no interest in the instrument. The following situations illustrate the application of the subsection. . . .

"c. The drawer makes the check payable to P, an existing person whom he knows, intending to receive the money himself and that P shall have no interest in the check."

Under this section of the code, the endorsement was unquestionably effective, since the only reasonable inference which can be drawn from the evidence is that Lucas, the controller of Luscombe, or someone on his behalf and at his instigation, endorsed the name of the payee when Lucas, who had signed on behalf of the drawer, intended the payee to have no interest in the instrument.

Montgomery contends that since the Commercial Code declares that the endorsement was effective, plaintiff has no right against Montgomery on the ground of forgery, guaranty or the like. This oversimplifies the law of commercial paper.

Section 3-417 of the Uniform Commercial Code (Commercial Paper), 12A PS §3-417, effective July 1, 1954, and thereafter during the times material hereto, provided that:

"(1) . . . any person who obtains payment or acceptance. . . warrants to a party who pays or accepts in good faith

"(a) that he has a good title to the instrument. . .

"(2) . . . any party who transfers an instrument for consideration warrants to his transferee and if the

transfer is by indorsement to any subsequent holder who takes the instrument in good faith that

"(a) all signatures are genuine or authorized: ..."

Section 4-207 of the Uniform Commercial Code (Bank Deposits and Collections), 12A PS §4-207, effective during the times material hereto, provided that:

"(1) ... a collecting bank warrant(s) to all subsequent intermediary banks and to the payor that (a) he has a good title to the item ...

"(2) Where a transferee other than the payor has given consideration against an item sent it for collection, the transferor ... warrants to such transferee ... that (a) all signatures are genuine or authorized."

Ordinarily, of course, where there were insufficient funds to pay a check, the drawee bank would dishonor the check and the endorsers would be liable to "pay the instrument according to its tenor ...": Section 3-414 of the Uniform Commercial Code. Here the circumstances were such that the drawee bank, possibly through no fault of its own, did not dishonor the check. Hence, the remedy of the drawee, if any, is by action for damages for breach of express guaranty or for breach of any of the above-mentioned warranties specified in the Uniform Commercial Code.

The express guaranty or the warranty of title and the warranty of genuineness of the signature of the payees' names on the 11 checks mentioned in our fifth finding of fact, are not guaranties of payment. As was stated in a decision under the Negotiable Instruments Law: "The endorsement did not purport to make the endorser signing it answer for the *default* of the prior endorsers, except in accordance with the law of negotiable instruments, and then only as an *endorser*, not as a *surety*. It did not purport to agree to pay the check except as it might be legally called upon to do so, as an endorser": Pennsylvania Mutual Life Ins. Co. v. Real

Estate Land T. & Tr. Co., 116 Pa. Superior Ct. 81, 92 (1935).

It has been said that: "A payor may recover payment made to a collecting bank on an item bearing a forged endorsement under this warranty" of good title: A.L.I., Bank Deposits and Collections, p. 132 (January, 1959). However, the authors of that volume declare at page 134 that "the result may go [against the payor and in favor of the bank which cashed the check] in any situation where the forger of the signature intended the named payee to have no interest in the instrument, since the indorsement would be effective to pass title."

We think that this correctly states the law. The forged endorsement gives rise to a cause of action in the drawee bank only if the drawer has the right to, and does set up the forgery as a bar to charging the drawer's account with the amount of the check. In the instant case, the drawer, under section 3-405 of the code, supra, is not allowed to do so. As stated by Hawkland, Commercial Paper, A.L.I., p. 69: "The Code puts this loss on the corporation and not on the bank."

The Uniform Commercial Code, sec. 1-106 provides:

"(1) The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . ."

This is but to restate the doctrine that "the damages are limited to just compensation for the loss sustained by reason of the breach": Newark Finance Corp. v. Acocella, 115 N. J. L. 388, 395, 180 Atl. 862, 865 (1935). How good would have been plaintiff's position if defendant had fulfilled its guaranty that the signature was genuine? "The breach of warranty only lost the plaintiff what could have been recovered if the signature had been genuine as represented . . . We think the plaintiff had no right whatever to recover from the

defendant the face value of the note when it is found it could not have collected that amount if the signature . . . had been genuine . . .": McNaghten Loan Co. v. Sandifer, 137 Kan. 353, 20 P. 2d 523, 526 (1933), cited in Beutel's Brannan, N.I.L. §65(3). In the instant case, there is no evidence that the forgery was the reason of plaintiff's loss and that if the signature were genuine plaintiff would have suffered no loss. Therefore, we can but conclude that plaintiff has not sustained its burden of proof that it suffered a loss by reason of the breach of the guaranty that the signatures of the payees endorsed on the check are genuine.

Plaintiff contends that it was under no obligation to know the signature of the payee; its sole duty was to know the signatures of the drawer. This may be conceded. However, the forgery of the payees' signatures was not the cause of plaintiff's losses. As between plaintiff and Luscombe, plaintiff incurred no loss or liability by reason of the forgery by Luscombe's officer.

Plaintiff's losses occurred because it honored checks of a depositor who had insufficient funds. Plaintiff contends that as between two innocent parties, the person who can best prevent the loss should be held responsible. If this maxim were applicable in the instant case, we could not say that the bank which honored a check drawn on it where the drawer had insufficient funds was less able to prevent the loss than the bank which cashed a check, the endorsement of the payee of which was forged by the signer of the check. The intent of section 3-405 of the code is to promote negotiability. True, the endorsers are liable on their statutory warranties that the prior signatures are genuine or authorized. However, as we stated hereinabove, this liability is limited to losses suffered from the breach of warranty. In the instant case, plaintiff has shown no loss by reason of the breach of warranty. It could show such a loss if the prior endorsers or payees

or drawer proved loss by reason of the forgery and thus were able to make a valid claim against the plaintiff. But those facts were not shown.

### Conclusions of Law

1. Plaintiff payor-drawee bank is not entitled to recover from defendant collecting bank on the warranty that the signature of the payee on the endorsement was genuine in a case where the person signing as or on behalf of the drawer intends the payee to have no interest in the instrument. At least, the rule stated hereinabove applies where the payor is unable to prove that it suffered a loss by reason of the breach of warranty of the Uniform Commercial Code, section 4-207 (2) (a), that the signature of the payee on the endorsement was genuine.

2. Defendant is entitled to a finding and judgment in its favor.

And now, September 17, 1962, the court finds for defendant, Montgomery County Bank and Trust Company, and against plaintiff, The First Pennsylvania Banking and Trust Company. Notice hereof shall be forthwith given by the prothonotary to the parties, or their attorneys, and if no exceptions hereto are filed within 30 days after service of such notice, judgment shall be entered hereon by the prothonotary.