## JOSEPH A. VEAZIE *vs.* CLEMENT WILLIS.

An agreement in writing to "guaranty the payment of a note, signed by A and payable to B and by him indorsed, and also indorsed by C and D," and further described by its amount, date and time, which agreement is made after being shown a note purporting to correspond with the description, and actually indorsed by C and D, but on which the names of A and B are forged, though not known to the guarantor nor to the holder not to be genuine, binds the guarantor to pay that note, if there is no other note in circulation at the time of the guaranty, answering to the description.

ACTION OF CONTRACT upon this guaranty : " Boston, April 25th 1850. For and in consideration of eighty dollars received of Joseph A. Veazie, I hereby guaranty the payment of a note signed by Edmund Boynton, and payable to George Lambert, and by him indorsed, also indorsed by B. F. Wellington and Charles M. Reed. The amount of said note is one thousand ninety eight dollars $\frac{41}{100}$. Note dated December 26th 1849, and payable in six months.                    Clement Willis."

The case was submitted to the judgment of the court upon the following facts, with an agreement that the court might draw such inferences therefrom as a jury might draw :

On the 25th of April 1850, Charles M. Reed, a broker, called on the plaintiff and offered him for sale a paper purporting to be a promissory note for $1098.41, dated at Boston, December 26th 1849, payable in six months after date, to the order of George Lambert, signed " Edmund Boynton," and indorsed " Geo. Lambert, B. F. Wellington, Chas. M. Reed ; " and left it with Veazie for examination and inquiry. The plaintiff called on the defendant, showed him the note, and inquired for what sum he would indorse it. The defendant took from the plaintiff a memorandum or written description of the note, and carried the memorandum to B. F. Wellington, one of the indorsers, who was a clerk in the employ of Lambert, for the purpose of inquiring concerning said note ; and Wellington informed him that there was such a note, and that it was genuine business paper ; and also told him that there was a genuine note signed by Boynton and indorsed by Lambert ; and the defendant supposed that to be the same note.

Veazie *v.* Willis.

The defendant thereupon informed the plaintiff that he would guaranty said note for the sum of eighty dollars; but that he would not indorse it, as he did not wish his name to appear upon paper bearing the name of Charles M. Reed, who was then insolvent. This guaranty was accordingly written, signed and delivered by the defendant to the plaintiff, who paid him therefor the sum of eighty dollars, and at the same time purchased the note from Reed for a valuable consideration.

The signature of Edmund Boynton and the indorsement of George Lambert upon the note were forgeries; the indorsements of B. F. Wellington and Charles M. Reed were genuine; and the fact that said signature and indorsement were forged was known only to Wellington, neither Reed, Veazie nor Willis having any reason to suspect that fact.

When the plaintiff purchased said note and procured said guaranty, there was not, and there never has been in existence any other note of the tenor of that described in the guaranty, indorsed or purporting to be indorsed by Wellington and Reed; but there was in existence a genuine note of the same date and tenor, signed by Boynton, and purporting to be indorsed by Lambert only.

At the maturity of the note in question due demand was made on Boynton, and due notice of nonpayment was given to the indorsers, Lambert, Wellington and Reed, and to the defendant. On the day of its maturity, the note was presented to the defendant, and payment demanded. The defendant declined payment, stating that, although he had no doubt that the note was the one which was alluded to in the guaranty to the plaintiff, and which was shown to him by the plaintiff, yet he had ascertained that neither the signature of Boynton nor the indorsement of Lambert was genuine, and that therefore he was not bound to pay the note; and no part of said note has been paid. Edmund Boynton, at the maturity of said note and for a long time after, was solvent.

This case was argued at November term 1855.

*W. G. Russell*, for the plaintiff, cited *Watson* v. *McLaren*, 19 Wend. 564; *Hastings* v. *Lovering*, 2 Pick. 214; *Coolidge* v

*Brigham,* 1 Met. 547; *Thrall* v. *Newell,* 19 Verm. 202; *Lobdek* v. *Baker,* 3 Met. 469; *State Bank* v. *Fearing,* 16 Pick. 533.

S. *D. Parker,* for the defendant, cited *Wilde* v. *Armsby,* 6 Cush. 314, and cases there cited; *Coolidge* v. *Brigham,* 1 Met. 547; *Richards* v. *Killam,* 10 Mass. 245; *Gurney* v. *Womersley,* 4 El. & Bl. 133; *Cripps* v. *Reed,* 6 T. R. 606; *Bishop* v. *Chambre,* 3 Car. & P. 55.

DEWEY, J.   Had the liability of the defendant arisen under an ordinary indorsement upon the note described in his guaranty, the fact, that the names of the maker and first indorser were not their genuine signatures, would constitute no defence to an action to recover the amount of such note.   This is well settled.   The language of the authorities is, that by his indorsement he virtually undertakes to every subsequent holder that the names of the maker and previous indorsers are really in the handwriting of those to whom they respectively purport to belong.   Kyd on Bills, (1st Amer. ed.) 268.   *Bomley* v. *Frazier,* 1 Stra. 442.   *Heylyn* v. *Adamson,* 2 Bur. 675.   *State Bank* v *Fearing,* 16 Pick. 533.   2 Greenl. Ev. § 164.

This is not however a case of an ordinary indorsement, and although, upon the parol evidence, it would seem that that was not adopted as the form of his liability, for the reason that he was unwilling to have his name appear on the paper in connection with one of the names already borne thereon, yet the contract not having been by an indorsement on the note, the liability of the defendant must now be considered as arising under the guaranty made on a separate paper, and the extent of liability thereby incurred is the proper question.

Had this promise been written upon the note itself, the defendant therein guarantieing the payment of that particular note, it would be difficult to find any principle upon which it could be held that he was not liable for the payment of such note, if the same was unpaid by the parties thereto.   Take the case of a note prepared to be sent to a bank or elsewhere for discount, and bearing the name of an individual purporting to be the maker, and of another purporting to be an indorser, and also having a guaranty written thereon under the name of

Veazie *v.* Willis.

such apparent indorser, and thereupon discounted by a *bona fide* purchaser, no one, we suppose, would contend that, in a suit by such purchaser against the guarantor, the latter could avoid all liability by showing that the names of the prior parties, or of some one of them, were in fact forged and counterfeited. The guaranty, in the case supposed, is that the note shall be paid according to its tenor at all events.

The present case is somewhat different in its circumstances, and certainly a case of more difficulty. No doubt can exist however as to the precise note, the payment of which, for a valuable consideration, was guarantied by the defendant. The guaranty describes this note; and no other of the like kind was in circulation. The application to the defendant for the guaranty was by the plaintiff, when negotiating for the purchase of this particular note. The note was shown to the defendant, as the note to be guarantied. It was not a case of general inquiry of the defendant at what sum he would guaranty a note of these parties, not yet made, or not yet seen. The defendant had equal opportunity with the plaintiff to examine the note. The facts stated show that this note was shown to the defendant before the guaranty was made, and the purchase took place upon the guaranty being signed by the defendant. There were two genuine signatures of indorsers upon the note, Wellington and Reed, neither of whom could have denied the signature of the maker, Boynton, or of the first indorser, Lambert. The paper was not therefore wholly a fictitious paper, without any genuine signatures by parties liable to be charged.

The ground of objection to the maintenance of the action is, that the contract, on the part of the defendant, was made upon the assumption that all the names borne on the note were genuine signatures, and that he intended only to guaranty the solvency and ability of the parties to pay the same, treating all the names thereon as liable, as parties to the note. But it appearing, upon the facts stated, that the defendant guarantied the payment of this particular note, and thereupon the plaintiff concluded his agreement to purchase the note, both parties being equally innocent as to any fraud, misrepresentation or conceal-

ment, the court are of opinion that, upon the nonpayment of the same at its maturity by the parties whose names were borne thereon, the defendant, under his guaranty, became liable to pay the same to the plaintiff, although it now is made to appear that the names of the maker of the note and one of the indorsers were forgeries.          *Judgment for the plaintiff.*