NEWARK FINANCE CORPORATION, PLAINTIFF-APPEL-
LANT, v. CHRIS (SOMETIMES KNOWN AS CRESCENZO)
ACOCELLA, DEFENDANT-RESPONDENT.

Argued May 9, 1935—Decided September 21, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *Philip Mandelbaum* (*Herman Marx,* of counsel).

For the respondent, *David S. Bingham* (*William M. McConnell,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is the plaintiff's appeal from a judgment of the District Court of the city of East Orange rendered by

the trial judge, sitting without a jury, in favor of the defendant.

A resume of the litigation below will help to clarify the controversy in the instant case. The plaintiff conducts a loan business under our "Small Loan act." *Pamph. L.* 1932, *ch.* 62, *p.* 94. On January 2d, 1933, a person representing himself as Roosevelt Arnold, made application to the plaintiff for a loan of $300. He presented a note for said amount purporting to be signed by himself and witnessed by one Raymond Friedman; it appears to be endorsed by Chris Acocella and Samuel Jacobus, Jr. Plaintiff first brought suit on the note against the purported maker and endorsers. Defendants pleaded that their respective signatures were forged. At this trial, it was conceded that the signatures of Arnold and Jacobus, Jr., were forgeries; as to Acocella, the case was tried and his signature was proved to be genuine; a judgment was rendered against Acocella and in favor of the plaintiff. Thereafter Acocella obtained a rule to show cause why a new trial should not be granted. The rule was made absolute; a new trial was granted.

On the retrial, the first state of demand, by concession of counsel for the respective parties, was abandoned and a new state of demand was filed. In this demand plaintiff sought to hold the defendant on the allegation that he *"guaranteed and warranted payment of a note in the sum of three hundred dollars, dated January 12th, 1933, as and when the same shall become due * * *."* On the face of the note it was provided, *inter alia,* "if default be made in any of the aforesaid payments [set forth in the note] then the entire balance * * * shall, at the option of the holder, become instantly due and payable, *and suit may be brought by the holder of this note against any one or all of the undersigned."* On the back of the note directly over defendant's signature appeared the following: "For value received we and each and all of the undersigned guarantors hereon, jointly and severally *guarantee and warrant payment of the within note* as and when the same shall become due * * *. In case of default, suit may be brought by the holder of this note at its option against any one or all of us." The forged signatures of

Arnold and Jacobus, Jr., were also conceded at this trial. The result was again a judgment in favor of the plaintiff and against the defendant. The latter then obtained a rule to show cause why the judgment as aforesaid should not be set aside and the court came "to the conclusion that inasmuch as the guaranty in the instant case was given to the party to whom the instrument guaranteed was given, and the transaction being contemporaneous, that there was but one contract and that the note being invalid there can be no recovery on the guaranty." Accordingly their judgment in favor of the plaintiff was set aside and judgment rendered in favor of the defendant.

Appellee contends (1) that the question as to whether the contract upon which the suit was based is one of suretyship or guaranty was not raised below nor is it embraced within the specification of determinations with which appellant is dissatisfied in point of law; (2) that the guaranty was collateral and secondary to the note which was the primary obligation; that since the principal obligation was invalid, the contract of guaranty and the note being integral were likewise invalid. We think that these contentions are untenable.

First: Specifications of determinations with which appellant is dissatisfied in point of law, are as follows: (1) That the trial judge erred in giving judgment for the defendant although he found that the latter signed the guaranty on the back of the note; (2) that the trial judge erred in holding that there can be no recovery on the guaranty where the principal obligor's purported signature to the guaranteed instrument is forged; that the trial judge erred in holding in fact (3) and in law (4) that the note and guaranty were contemporaneous and but one contract. We think that they sufficiently embrace the controversy before us.

Second: It is contended for the appellee here, as it was below, that, since his undertaking was merely that of a guarantor, the absence of liability on the part of the maker discharges the liability of the guarantor. The words "guaranty" and "surety" have frequently been used synonymously. There

is, however, a distinction. That distinction is aptly stated in 28 *C. J.* 891, § 6, and is as follows:

"Whether the contract is that of suretyship or guaranty does not depend upon the use of particular or technical words such as 'security,' 'surety,' 'guaranty,' or 'guarantee.' The nature of the obligation, whether primary or secondary, is the determining element; and although an agreement to stand as 'surety' or become 'security' indicates the undertaking of a surety, if the substance and effect of the instrument is that of a guaranty, it will be so construed notwithstanding the word 'surety' or 'security' is used throughout the contract. On the other hand, if the obligation is direct and primary, the contract will be that of suretyship, and not of guaranty, although the word 'guaranty' or 'guarantee' is employed."

In *Wilkinson-Gaddis Co.* v. *Van Riper,* 63 *N. J. L.* 394; 43 *Atl. Rep.* 675, the Supreme Court held:

"The only other objection is that, considering the contract as one of pure guaranty, the declaration should have averred due diligence to recover the amount from the principal debtor, or else averred as an excuse for the want of such diligence his insolvency. Upon a collateral contract of guaranty for the collection of the debt, this is the rule of pleading. But I think this objection is founded upon a mistake as to the character of the contract or undertaking upon which the declaration is founded. It will be seen that the guaranty or contract upon which the action is based, as alleged in the declaration, is one in which the defendant engages to make payment herself of the debt contracted for or to be incurred up to the amount named. If it had been a contract of liability upon the failure of the creditor to collect of the principal debtor, or, in other phrase, a guaranty of collection, simply, then an unsuccessful attempt against him to collect and notice thereof to the defendant, or insolvency would be not only a requirement of proof, but also an averment of that purport and effect because necessary to be contained in the declaration. But, under the contract as stated in the declaration, the defendant became an original promissor. The mere use of the term 'guaranteed' as used in the declaration, can have very little significance in determining the

character of the engagement of the defendant for by what-
ever name it is called, the contract was one to pay, not upon
the default of or miscarriage of the principal debtor, but one
which bound the defendant with him at the same time and
upon the same consideration to pay the debt at the time
incurred, and such as should thereafter be incurred, to the
amount named; and the defendant *as a surety* was bound to
know every default of his principal and therefore such default
and notice thereof need not be averred. The default of the
principal debtor was alike the default of the defendant. The
obligation was an original one to pay the debt on the part of
the defendant, and she could be subjected to an action imme-
diately and before suit against the principal debtor. These
views are fully sustained by the authorities, and the distinc-
tion between these two classes of engagements fully recog-
nized. 1 *Brandt S. & G.,* §§ 97, 102; 2 *Ibid.,* § 153, and
cases cited. One who guarantees payment becomes absolutely
liable upon any default of payment by his principal. *Rand
Com.* 850, and cases cited. One who guarantees the collec-
tion only incurs a conditional liability, and the condition is
that due diligence has been exercised to collect, of which the
guarantor has had notice."

See, also, *Perkins-Goodwin Co.* v. *Hart,* 83 *N. J. L.* 471;
83 *Atl. Rep.* 877; *Domestic Credit Corp.* v. *Chapman,* 8 *N. J.
Mis. R.* 571; *Pfeiffer* v. *Crossley,* 91 *N. J. L.* 433; 103 *Atl.
Rep.* 1000; *Chaddock* v. *Vanness,* 35 *N. J. L.* 517; *Home-
wood People's Bank* v. *Hastings,* 106 *Atl. Rep.* (*Pa.*) 308
(wherein it is held that when the contract fixes the time when
the promissor is to assume liability for the debt, his obliga-
tion is that of a suretyship, but where there is no time fixed,
the obligation is general and merely that of guaranty). Com-
pare, also, *Superior Finance Corp.* v. *McCrane Motors, Inc.,*
11 *N. J. Mis. R.* 857; divided opinion, 113 *N. J. L.* 514.

We are, therefore, of the opinion that although the defend-
ant was charged with having "guaranteed and warranted
payment," yet the legal efficacy of that undertaking was tan-
tamount to that of a suretyship.

Third: Moreover, we are of the opinion that sections 23
(effect of forged signature). 65 (warranty, where negotiation

by delivery, &c.), 66 (liability of general endorser) of our Uniform Negotiable Instruments act (3 *Comp. Stat.* (1709-1910), *p.* 3734), are also dispositive of the controversy before us.

It will be observed that under the aforesaid sections, Acocella was precluded from setting up the defense of forgery of the maker's signature to the instrument because he warranted that the instrument was genuine in all respects; that it was a valid and subsisting obligation at the time of his endorsement.

In *Security Trust Co.* v. *Giglio*, 4 *N. J. Mis. R.* 350; 132 *Atl. Rep.* 651, the plaintiff bank sued the alleged maker and an endorser of a note. The trial court found as a fact that the signature of the maker was a forgery and entered judgment for both defendants. On appeal, the Supreme Court affirmed the judgment in favor of the alleged maker but reversed the verdict against the endorser, because "under the Negotiable Instruments act (3 *Comp. Stat., p.* 3743), by his endorsement, he impliedly warranted that the note was valid and subsisting negotiable paper. At common law and in this state the rule was similar to that expressly enunciated in the Negotiable Instrument act. *Edmunds* v. *Rose*, 51 *N. J. L.* 547; 3 *R. C. L.* 1148."

The Supreme Court of Pennsylvania, in *First National Bank of York, Pennsylvania*, v. *Blair*, 173 *Atl. Rep.* 329, decided that the forgery of the names of the makers of notes would not in itself relieve the "guarantors" of their obligation. Likewise, the highest court in Maine, in *Wamesit National Bank* v. *Meriam*, 96 *Atl. Rep.* 740, laid down the principal that, "* * * by endorsing a note and delivering it to an endorsee the endorser guarantees both the genuineness of the instrument and the validity of the promise. So far as the endorsee is concerned, the endorser engaged that the obligation is genuine and legal as it purports to be. He is estopped from denying either its genuineness or its validity in a suit brought by the endorser against him. It may be rank forgery * * * yet the endorser's liability is unaffected thereby."

In 50 *C. J.* 62, § 107, the principle is thus stated: "If the obligee accepts the instrument in good faith, without notice of the forgery, it is no defense to a surety that he was induced to sign an instrument on the supposition that a prior signature thereon was genuine; he is bound, although the signature of the principal is a forgery." To the same effect are the following cases, cited among others, in 5 *Uniform Laws Annotated* (Negotiable Instruments act), §§ 23, 66; *Beem* v. *Farrell,* 135 *Ia.* 670; 113 *N. W. Rep.* 509 (*p.* 132, § 23), that proof of one forged signature on a note will not necessarily be given effect to avoid the note in favor of those whose signatures are found to be genuine. *State* v. *Corning State Savings Bank,* 139 *Ia.* 338; 115 *N. W. Rep.* 937 (*p.* 134, § 23), that an action on endorsements and guarantees only is not precluded by the fact that the signatures to the note are forged. *State* v. *Farmer,* 201 *S. W.* (*Mo.*) 955 (section 66, *U. L. A.* (*N. I. A.*), 468), that an endorser warrants the maker's signature. *Devens* v. *Van Valkennberg,* 192 *Mo. App.* 180; *S. W. Rep.* 196 (section 66, *U. L. A.* (*N. I. A.*) 468), that an endorser is estopped to deny the validity of an instrument. *Moler* v. *State Bank,* 176 *Minn.* 449; 223 *N. W. Rep.* 780; 62 *A. L. R.* 799 (section 66, *U. L. A.* (*N. I. A.*), 468), that an endorser guarantees the genuineness of the signatures of a prior endorser though it is in fact forged. In accord, *Packard* v. *Windholz,* 180 *N. Y.* 549; 73 *N. E. Rep.* 1139; *Oriental Bank* v. *Galto,* 188 *N. Y.* 610; 81 *N. E. Rep.* 1170 (both cases noted in section 66, *U L. A.* (*N. I. A.*), 468.

Many other decisions noted in 5 *U. L. A.* (*N. I. A.*) under section 23, page 132, point out that the suit against an endorser is not on the instrument itself, but on the warranty of genuineness and payment. Section 23 of the N. I. A. "goes no further than to make such signatures inoperative and to bar the enforcement of rights founded thereon. The language is carefully chosen to confine the effect of the section to the specific points covered thereby. It does not purport to declare the instrument void, nor the genuine signatures thereon inoperative. It protects the party whose signature has been forged—but contains no provisions releasing

other parties from whatever liability they may have assumed." *Public Bank* v. *Burchard,* 135 *Minn.* 171; 160 *N. W. Rep.* 667; (*N. I. A.* 132, § 23): "It only affects parties who have acquired the paper through or under the forged or authorized signature." *Jett* v. *Standafler,* 143 *Ky.* 787; 137 *S. W. Rep.* 513 (*N. I. A.* 132, § 23). "One signing as surety on the faith of a forged signature of another is not relieved of liability since his liability to the payee does not arise 'through or under' the forged signature." *Morris Plan Co.* v. *Adler,* 213 *N. Y. Supp.* 227; 126 *Mis.* 237 (*N. I. A.* 132, § 23). "The liability of the payee of a note which he endorses without recourse, when the signature of one of the makers was forged thereto, is not on the instrument of his endorsement, but is in damages for the breach of the implied warranty, and the damages are limited to just compensation for the loss sustained by reason of the breach." *McNaughton Loan Co.* v. *Sandifer,* 20 *P.* (*2d*) 523; 137 *Kan.* 353; 5 *U. L. A.,* § 23; 1934 *Supp.* 33.

The case at bar is controlled not only by implied warranties of an endorser in blank, but also by the express warranties and promises appearing on the note. The mere use of the word "guarantee" does not aid the endorser. It did not have the effect of restricting, qualifying or modifying his obligation, but to the contrary it had the effect of enlarging it.

In *Jaronko* v. *Czerwinski,* 166 *Atl. Rep.* 388; 117 *Conn.* 15; 90 *A. L. R.* 299; 5 *U. L. A.,* § 66 (1934 *Supp.* 118), it was held that the liability of a guarantor differs from that of an endorser, in that the latter contracts to be liable only upon condition of presentment on the exact day of maturity and due notice of dishonor and is discharged by a failure in either particular, although he may suffer no actual damage, while a guarantor is bound to pay the amount upon presentment and notice to him, of dishonor within a reasonable time. The same person may be a guarantor and also an endorser of a note; and in such case, while failure to give him due notice of demand and non-payment will discharge him as endorser, he will still be bound as guarantor. Compare *Adolph Remish, Inc.,* v. *Woodruff,* 87 *Cal. Dec.* 75; 28 *Pac. Rep.* (*2d*) 360; 91 *A. L. R.* 684; 5 *U. L. A.,* § 66, 1934 *Supp.* 118; *Caru-*

*thers First National Bank* v. *Clifton,* 73 *Cal. App.* 157; 238 *Pac. Rep.* 371; section 66 (*U. N. I. A.*) 469.

Thus it clearly appears to us that it was, in all events, reversible error to find for the defendant and against the plaintiff.

Judgment is reversed.