**James T. BOHART et ux., Appellants,**

v.

**UNIVERSAL METALS AND MACHINERY, INC., Appellee.**

No. 18489.

Court of Civil Appeals of Texas, Dallas.

March 27, 1975.

Rehearing Denied April 24, 1975.

Tom James, Blanchette, Shelton & James, Dallas, for appellants.

John H. McElhaney, Turner, Rodgers, Sailers, Jordon & Calloway, Dallas, for appellee.

AKIN, Justice.

Universal Metals and Machinery, Inc., brought suit against James T. Bohart and his wife for payment of their guaranty on a promissory note. Defendants answered asserting the note in question was a forgery, that there was a failure of consideration for the promissory note and guaranty, and that defendants were induced to sign the guaranty through fraudulent misrepresentations of plaintiff. Defendants also filed a cross action against plaintiffs seeking recovery for alleged usurious interest on the note. Prior to the time of trial, defendants filed a plea in abatement based upon Tex.Bus. & Comm.Code Ann. § 34.02 (V.T.C.A.1968), demanding that plaintiff bring action against the alleged maker of the note in the Republic of Mexico. The trial court overruled the plea in abatement. After a trial to a jury, the trial court entered a judgment in plaintiff's favor, and denied defendants all recovery on the cross-action.

The alleged maker of the note in question was Beneficiadora de Minerales de Tlaxcala, S. A. (hereinafter BMT), a foreign corporation. The promissory note, in the amount of $225,000, was dated November 1, 1971, and was allegedly in payment for used machinery previously delivered by the plaintiff to BMT in the Republic of Mexico. The note was followed by a guaranty agreement, to-wit:

> For value received, the undersigned ―――――――, as primary obligor(s), hereby (jointly and severally) unconditionally guarantee(s) the prompt payment of principal and interest on the foregoing promissory note when and as due in accordance with its terms, and hereby waive(s) diligence, presentment, demand, protest, or notice of any kind whatsoever, as well as any requirement that the holder exhaust any right or take any action against the maker of the foregoing promissory note and hereby consent(s) to any extension of time or renewal thereof.

(Name of Guarantor) (Name of Guarantor)

Both defendants signed this guaranty.

The jury found that the note in question was a forgery; that plaintiff had no knowledge of this fact when it accepted the note; that there was no agreed price between plaintiff and BMT for the machinery, the payment for which the note was allegedly executed.

■ The primary question presented here is whether or not guarantors who sign an absolute guaranty of a promissory note are liable to the obligee when the note itself is a forgery. We hold that they are not liable for the following reasons: (1) that the guaranty agreement is ambiguous; and it must be construed in the light most favorable to defendants, and, therefore, the defendants are guarantors rather than primary obligors; and (2) that there must exist a valid primary obligation to be guaranteed.

■ Defendants contend in their first point of error that the trial court erred in granting judgment on the promissory note against defendants after the jury found that the promissory note in question was a forgery. Plaintiff contends that defendants' liability exists solely on their execution of the guaranty here. To sustain plaintiff's position and to over-

rule defendants' first point of error, we must first construe the meaning of the guaranty in question to ascertain if the guaranty places a primary liability on defendants notwithstanding the fact that the note itself is a forgery, and thus a nullity. In following the generally accepted rules of construction in contract, we must look at the entire agreement as a whole and give effect to all words and phrases used therein to ascertain and give effect to the real intention of the parties as revealed by the language used. See Brown v. Brown, 245 S.W.2d 995, 997 (Tex.Civ.App.—Amarillo 1951, writ ref'd).

 The determination of whether or not the guaranty, in and of itself, establishes the liability of the defendants turns on the question of whether or not it is clear and unambiguous on its face. It has been held that a contract is ambiguous only when application of pertinent rules of interpretation to the instrument as written leaves it genuinely uncertain as to which of the two or more meanings is the proper one. See Wynnewood State Bank v. Embrey, 451 S.W.2d 930 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e). Ambiguity is a question of law rather than of fact. Brown v. Payne, 142 Tex. 102, 176 S.W. 2d 306 (1943). Plaintiff here contends that the words "primary obligors" means that defendants are primarily liable as makers. The terms "guarantee" and "guarantor," however, indicate a primary obligation of another by definition. See Southwest Savings Ass'n v. Dunagan, 392 S.W.2d 761, 766 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). Defendants here cannot be both "primary obligors," such as a maker, and secondarily liable, such as guarantors. It can, therefore, be seen that this clause is capable of two different constructions: the construction placed on the clause by plaintiff that would make defendants "primary obligors"; and the other construction that could reasonably be placed upon this clause is that the defendants are secondarily liable as guarantors. The term "primary obligor" and the term "guarantor"

are mutually exclusive. We conclude, therefore, that the guaranty contract here is ambiguous on its face. Indeed, even plaintiff recognizes this ambiguity in that he first urges that the defendants are "primary obligors" under it in order to establish the liability of the defendants on the forged note, and then, in response to defendants' action for usury, replies that they are "mere guarantors" under the same clause.

Since we conclude that the guaranty clause in question is ambiguous, we must now look to the attending facts and circumstances to ascertain the real intention of the parties and the construction placed on such agreement by the parties prior to the time of litigation. In this regard, it is significant that plaintiff's president in its application to the Foreign Credit Insurance Association (hereinafter referred to as FCIA) for insurance dated August 16, 1971, designated defendant, James T. Bohart, as the "guarantor." Again, on July 12, 1972, when plaintiff's president filed a claim with the FCIA for the insurance previously issued on the note in question, again, plaintiff's president listed the names of the defendants as "guarantors." It is, therefore, clear to us that plaintiff, both prior to the execution of the guaranty by defendants and after the note was in default, considered the defendants as guarantors rather than persons primarily liable such as a co-maker. All of the documents referred to above were prepared and executed by plaintiff prior to commencement of this litigation. This evidence is even more compelling since plaintiff's president, Mr. Feinstein, testified that over the years he had done financing through the FCIA and was thoroughly familiar with its procedures.

 It has long been held in this state that where the meaning of a contract is ambiguous, that is, rendering it susceptible to two different interpretations, the one most favorable to the guarantor will be given effect. See Southwest Savings Ass'n

v. Dunagan, *supra*; City State Bank & Trust Co. v. United Paperboard Co., 146 S.W.2d 832 (Tex.Civ.App.—San Antonio 1940, no writ).

■ Since we have concluded that this is a guaranty agreement and that the defendants are guarantors, the rule of strictissimi juris applies meaning that the guaranty agreement may not be extended by implication or construction beyond the precise terms of the contract. McKnight v. Virginia Mirror Co., 463 S.W.2d 428 (Tex.1971); Southwest Savings Ass'n v. Dunagan, *supra*; Hughes v. Straus-Frank Co., 127 S.W.2d 582 (Tex.Civ.App.—San Antonio 1939), affirmed, 138 Tex. 50, 156 S.W.2d 519 (1941). Since the defendants do not expressly guarantee the genuineness of the maker's signature, we cannot say that the term "unconditionally guarantee(s) the prompt payment" should be broadly construed to include such a guaranty of genuineness. *See* Jarecki Manufacturing Co. v. Hinds, 295 S.W. 274 (Tex. Civ.App.—Eastland 1927), writ dism'd, 6 S.W.2d 343 (Tex.Comm'n App.1928); Ryan v. Morton, 65 Tex. 258 (1886).

The principles enunciated above have long been well-settled law in this state. In the early case of Smith v. Montgomery, 3 Tex. 199, 204 (1848), Mr. Justice Wheeler stated:

[I]t is not for the plaintiff now to say, after having treated the undertaking of the defendant throughout as that of a guarantor, and no more, his liability is that of a principal debtor. The question in every case of this class is, to whom did the guarantee originally look for the primary fulfillment of the engagement? If the whole credit be not given to the person who comes in to answer for another, his undertaking is collateral, and his liability that only of a guarantor.

The intention and understanding of the parties is the criterion in every case by which to ascertain the character of the contract and the extent of the liability.

This rule is applicable here inasmuch as plaintiff throughout the entire transaction treated defendants as guarantors and BMT as the principal obligor. It was not until after plaintiff learned through the FCIA investigation that the signature of BMT was a forgery that plaintiff first looked to defendants as "primary obligors."

■ What then is the liability of defendants who have guaranteed the forged note under which, as a matter of law, the principal obligor is not liable? Plaintiff argues that since this type of guaranty has been construed as an "absolute" guaranty, that the measure of liability of defendants-guarantors here is primary and not secondary. He argues that where an absolute guaranty exists the guarantors incur independent liability, without reference to the principal obligation. Plaintiff further contends that this is true because Tex.Bus. & Comm.Code Ann. § 3.416(a) (Tex. UCC 1968) provides:

'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor *without resort by the holder to any other party*. [Emphasis added.]

It is true, as plaintiff contends, that an obligee may sue an absolute guarantor without first maintaining suit against the principal obligor. Plaintiff cites numerous cases for this proposition. In all of these cases, however, there was a valid obligation on the part of the obligor under which the guarantor would have the right of subrogation against the obligor under Tex. Bus. & Comm.Code Ann. § 34.04 (Vernon 1968). For this reason, these cases are not in point and plaintiff's position is without merit. The very essence of guaranty is that there be a *primary obligation* to be

guaranteed.[1] Here, since the note itself is a forgery, it is not an obligation on the part of the maker,[2] and hence, there can be no obligation on the part of the guarantor. Moore v. Grain Dealers Mutual Insurance Co., 450 S.W.2d 954, 957 (Tex.Civ.App.— Houston [1st Dist.] 1970, no writ); Walter E. Heller & Co. v. Allen, 412 S.W.2d 712, 721 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). This position is also supported in 10 Williston on Contracts § 1214, at 714 (3d ed. 1967), wherein it is stated:

> The general rule is that the surety is not liable to the creditor unless his principal is liable, thus he may plead the defenses which are available to his principal. An exception is that the principal's defenses arising by operation of law are not available to the surety, nor are defenses of a personal nature.

Plaintiff also argues that defendants as guarantors have liability despite any lack of genuineness in the signature of the primary obligor because the jury found that the instrument was accepted by plaintiff-obligee without knowledge of the forgery. In support of this contention, plaintiff has cited 72 C.J.S. Principal and Surety §§ 18 and 74 (1951). Section 18 provides:

> The forgery of the names of one or more of several obligors to a bond or

note does not release a surety thereon, if the obligee accepts the instrument without notice of the forgery.

Section 74 states:

> If the obligee accepts the instrument in good faith, without notice of the forgery, it is no defense to a surety that he was induced to sign an instrument on the supposition that a prior signature thereon was genuine; he may be bound although the signature of the principal is a forgery.

We have carefully reviewed all of the cases cited by Corpus Juris Secundum for these statements and find that the holding of the cases do not support these conclusions. At best, some of the decisions indicate support by dictum.[3] These statements set forth in Corpus Juris Secundum have never been the law in Texas. Plaintiff has cited us no Texas cases that support these propositions and we have been unable to find such a case. In fact, all Texas cases that we have reviewed indicate to us that this is not the law in Texas.

We, therefore, conclude that plaintiff's contention is totally without merit. We hold that as between an innocent obligee and an innocent guarantor of a forged note, that the innocent guarantor should prevail. This has long been the estab-

---

1. Simpson on Suretyship § 14, at 16 (1950) states: "The guarantor's promise is separate, is expressly conditioned on the principal's failure to perform, and gives rise to a secondary duty."

2. Tex.Bus. & Comm.Code Ann. § 3.404(a) (Tex. UCC 1968) provides:
 "Any unauthorized signature is wholly inoperative as that of the person whose name is signed . . . ."
 "Unauthorized signature" is a defined term (§ 1.201). It includes a forgery.

3. Newark Finance Corp. v. Acocella, 115 N.J.Law 388, 180 A. 862 (New Jersey Supreme Court 1935) is such a case. In Acocella, a forged note endorsed by defendant was negotiated to plaintiff, and the endorser held

liable. The *holding* of the New Jersey Supreme Court was based upon their Uniform Negotiable Instrument Act. By dictum the court made the following statement: "We are therefore of the opinion that, although the defendant was charged with having 'guaranteed and warranted payments,' yet the legal efficacy of that undertaking was tantamount to that of a suretyship." We have shepardized *Acocella* and find that it has been cited in only three cases in the last forty years and has never been cited, other than in Corpus Juris Secundum, for the proposition urged here by plaintiff. We, therefore, conclude that this dictum of some forty years ago by the Supreme Court of New Jersey is not persuasive authority for plaintiff's contention.

lished rule. Simpson on Suretyship § 54, at 271 (1950):

> When the principal's signature upon an instrument is forged or unauthorized, a surety signing is not liable to the promisee. Since the creditor deals directly with the principal, the duty is upon him to ascertain the genuineness of the signature. The rule is to the contrary, however, when another surety's signature is forged or unauthorized, provided this fact was not known to the promisee. The duty is upon the surety to determine whether the cosurety's signature is genuine.

*See* Green v. Kindy, 43 Mich. 279, 5 N.W. 297 (1880).

■ If this is a contract of guaranty independent of the forged note, as our learned colleague Mr. Justice Guittard contends in his dissenting opinion, there must be consideration other than that of the indebtednesses represented by the note. The general rule is that where a contract of guaranty is entered into independently of the transaction which created the original or present debt or obligation, the guarantor's promise must be supported by consideration distinct from that of the present debt. Such consideration cannot be found in the mere promise to pay the existing debt of another. Waller v. Missouri City State Bank, 482 S.W.2d 40, 43 (Tex. Civ.App.—Tyler 1972, writ ref'd n. r. e.); 38 Am.Jur.2d Guaranty § 45, at 1047 (1968); Green v. American Refining Properties, 22 S.W.2d 343 (Tex.Civ.App.—El Paso 1929, no writ).

Furthermore, we are persuaded that the decision of this court in Southwest Savings Ass'n v. Dunagan, *supra,* is directly applicable to the facts of this case. In *Dunagan,* this court found that since the maker of the note had never come into existence, there could be no obligation on the part of the maker, and, hence, no obligation on the part of the guarantor. We fail to see the distinction between the situation in *Dunagan* and the situation here. In *Dunagan,* the maker never came into existence and here, the obligation of the maker never came into existence.

This court in *Dunagan* has previously approved this decision when our Chief Justice stated:

> A guaranty obligation is, by its very terms, a secondary obligation dependent upon the existence of a principal obligation.

Since no principal obligation existed in this case (on the part of the maker BMT), the obligation of the defendants never came into existence.

Because of our holding that the defendants are guarantors and are not liable under the forged note, we need not consider their counterclaim for usury. We, therefore, overrule defendants' fourth point of error. In view of our holding here sustaining defendants' first point of error, we need not address defendants' other points.

Accordingly, the judgment of the trial court is hereby reversed and judgment rendered that plaintiff take nothing against defendants.

CLAUDE WILLIAMS, C. J., concurs.

GUITTARD, J., dissents.

CLAUDE WILLIAMS, Chief Justice (concurring).

I agree with Associate Justice Akin that the trial court erred in rendering judgment against Mr. and Mrs. Bohart. Any possible liability on the part of the Boharts must flow from the guaranty agreement signed by them and attached to a promissory note which had been purportedly signed by Beneficiadora de Minerales de Tlaxcala, S.A., a Mexican corporation, and bearing the name of Universal Metals and Machinery, Inc., as payee. It subsequently de-

veloped, and was so found by the jury that the signature of the maker-corporation was a forgery.

I am convinced that the guaranty agreement executed by Mr. and Mrs. Bohart, and which is copied verbatim in the majority opinion, is ambiguous on its face and being ambiguous, we must construe such instrument in favor of the Boharts. Having done so, it necessarily follows that their liability as guarantors never came into existence because of the nonexistence of a maker of the note to be guaranteed.

The rules governing the question of ambiguity of instruments are well settled:

(1) The question of whether an instrument is ambiguous is one of law to be determined by the court and not by a finder of fact.

(2) After applying established rules of interpretation to the questioned agreement, if it remains reasonably susceptible of more than one meaning it is ambiguous, *"but if only one reasonable meaning clearly emerges it is not ambiguous."* [Emphasis added.] Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

(3) The writing, as a whole, must be looked to and given its reasonable, natural and probable meaning. It must be interpreted according to the obvious import of its language without resorting to a subtle or a forced construction. One clause cannot be considered by itself, but every clause must be considered with reference to the whole instrument as well as with reference to every other clause. Brown v. Brown, 245 S.W.2d 995, 997 (Tex.Civ.App.—Amarillo 1951, writ ref'd).

(4) Where the parol evidence admitted is undisputed, the question as to what the parties intended by the instrument is one of law to be determined by the court. Dallas Hotel Co. v. Lackey, 203 S.W.2d 557, 561 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.).

An examination of the guaranty agreement before us definitely compels the conclusion that one reasonable meaning does not clearly emerge therefrom. Thus, when one reads the words "primary obligor(s)" standing alone, it might be reasonably concluded that such words would import to the signers of the instrument the same liability as the maker of the promissory note. On the other hand, the words "unconditionally guarantee(s) the prompt payment of principal and interest on the foregoing promissory note . . . .", especially when considered in the light of the words "guarantor(s)" appearing in two places under the signature lines following the body of the instrument, and also reference to "the maker of the foregoing promissory note" strongly indicates the purpose and intent of the parties to create a secondary obligation on the part of the signers of this instrument, as opposed to a primary obligation on the part of the maker of the note. Such words also clearly demonstrate the purpose and intent of the parties that there would be a "promissory note" which comprehends a valid note containing both a maker and a payee. A primary obligation is one which is the principal object of the contract. A guaranty, on the other hand, is an undertaking to answer for another's liability and collateral thereto. In other words, it is a collateral undertaking to pay the debt of another in case such other person does not fulfill his obligation. These two legal relationships are different in character and the assumption of each leads to a different legal result. So, in this instance, we have an instrument which contains language which may reasonably be said to imply two different interpretations and two or more meanings and is, therefore, ambiguous. This fact of ambiguity appears very definitely and realistically from the position taken by Associate Justice Guittard in his dissenting opinion.

The diversity of opinion concerning the true meaning of the instrument is also clearly and convincingly demonstrated by the fact that appellee takes the position in

his main thrust that the Boharts were primary obligors on the instrument and then, in defense to the usury claim by the Boharts, appellees blandly assume the position that the Boharts were really nothing more than guarantors.

I am convinced from reading the entire record in this case that it was the purpose and intent of the parties to the transaction that Mr. and Mrs. Bohart were to be nothing more than guarantors of the obligation of the Mexican corporation. At the outset of the transaction a promissory note was forwarded to the Mexican corporation and signed by it with no guarantors. Appellee being advised that the Foreign Credit Insurance Association would not accept this note without guarantors, another instrument was submitted and purportedly signed by the Mexican corporation and also by Mr. and Mrs. Bohart, as guarantors. At no place in this record do we find any indication of purpose and design on the part of the parties to impress upon the Boharts an original obligation independent of the forged promissory note. Had this been the intention of the parties, the Boharts would have signed, not as guarantors, but as co-makers.

Being ambiguous, the instrument must be strictly construed in favor of the Boharts as guarantors. I, therefore, concur in the finding that such instrument was nothing more than a guaranty agreement signed by the Boharts and since there was never any primary obligation brought into existence by the execution of a maker then there can be no liability as to such guarantors. Being guarantors, the *sine qua non* of liability against them must be the existence of a primary obligor in the form of the maker of the note. The maker of the note did not sign the same and, hense, no valid promissory note ever came into existence. There being no primary obligation, there can be no secondary obligation against the Bo-

harts. Associate Justice Guittard, in his dissenting opinion, admits that "the obvious purpose of the guaranty was to assure the bank and the agency that the guarantors would stand responsible for this particular note." I agree with this statement but point out that it postulates the existence of a valid, primary obligation *by the corporation* before liability would be laid at the door of the guarantors, in this instance, the Boharts.

A reading of the lengthy and obviously strained effort on the part of my Brother Guittard in his dissent to demonstrate lack of ambiguity does precisely the reverse. As Chief Justice Calvert said in *Daniel, supra,* it is only when *one meaning clearly emerges* from the instrument that it is said not to be ambiguous. The dissent does more than anything else to vividly illustrate the absence of *one clear meaning*. To impose liability upon the Boharts based upon such an ambiguous instrument would result in serious injustice.

For these reasons, I join Justice Akin in reversing the trial court's judgment and rendering judgment that appellee take nothing against appellants.

GUITTARD, Justice (dissenting).

I do not agree that the terms "primary obligor(s)" and "guarantee(s)" are mutually exclusive and create an ambiguity in the instrument so as to invoke the rule that it should be interpreted most favorably to the guarantors. Neither do I agree that the term "guarantee" necessarily implies a valid primary obligation on the part of someone other than the guarantors. I conclude, rather, that the language of the document is clear, and that it is an independent contract imposing liability on the guarantors if the note is not paid, without reference to any liability of the apparent maker of the note.[1]

1. The opinion of Justice Akin states that an independent guaranty agreement must be based on a separate consideration. I do not reach this question, since the agreement re-

cites "value received," and lack of initial consideration has not been raised either in the trial court or in this court.

The court's holding, as stated in the opinions of both Justice Akin and the Chief Justice, that the language of the contract is ambiguous, is based on theory that the words "primary obligor(s)" and "guarantee(s)" contradict each other and leave the meaning uncertain. Without any attempt to reconcile these terms so as to give effect to both, the majority applies the rule of strict construction in favor of the guarantors, and also resorts to extrinsic evidence to determine the parties' intention. By this process, the court construes the contract so as to render the words "primary obligor(s)" meaningless.

I regard this method of construction as contrary to the accepted rules for interpretation of contracts. In Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951), Justice Calvert, speaking for the Supreme Court, said that a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leave it genuinely uncertain which one of two or more meanings is the proper meaning. *Id.* at 157. He explained that the primary concern is to give effect to the true intention of the parties, and that to achieve this object, the courts will examine the entire writing, "seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 158. Likewise, in Young v. De la Garza, 368 S.W.2d 667, 670 (Tex.Civ.App.—Dallas 1963, no writ), this court held that apparently conflicting contractual provisions "are to be reconciled and harmonized, if possible, by reasonable interpretation, and the contract as a whole given effect." If the apparently conflicting provisions can be harmonized, the contract is not ambiguous, and there is no occasion to apply the rule that a guaranty is to be construed most favorably to the guarantor.[2]

When I apply these rules, I have no difficulty in harmonizing the expression "as

primary obligor(s)" with the word "guarantee(s)." I concede that "guarantee" and "guaranty" are sometimes used in a strict technical sense to mean a collateral agreement creating a secondary rather than a primary obligation. This, however, is not the only sense in which these words are used. They are also used in the sense of an assurance that someone else will perform, regardless of whether that person is legally bound.

A "guaranty" is a species of indemnity contract. It is a promise to stand responsible for occurrence of an event that may not be directly within the control of the immediate parties to the contract. The problem of interpretation is to identify the event for which responsibility is assumed. If that event is a third person's discharge of his legal obligation, no liability arises unless the third person is legally bound. Accordingly, the guarantor's obligation is termed "secondary." If that event is a third person's performance of a specified act, the guarantor's liability arises when the third person has failed to perform as specified, irrespective of his legal obligation. In this situation the guarantor's obligation may properly be termed "primary." This analysis is confirmed by the following passage from Simpson on Suretyship § 55, at 277 (1950):

It is obviously possible for S to guarantee that P will render the promised performance. It is equally possible for S to guarantee that P will render such performance as he is legally bound to render. In the latter case it is clear that by the terms of his contract the surety is liable for nothing if the principal is under no liability. In the former case it is just as clear that the surety is liable upon the principal's nonperformance of his promise, irrespective of whether the principal was legally obligated to perform it, inas-

---

2. *Cf.* Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951), in which the court said that in the absence of ambiguity there was no occasion to apply the rule that a contract is to be construed most strongly against its author.

much as a promisor, if he so intends, may obligate himself to pay if acts are not performed. . . . [I]t is a problem of intention. Although it is true that unless the principal is legally obligated, the promisor cannot be bound as a guarantor, or surety, yet the question is not how the defendant is bound, but whether he is bound or not. An assumption that the promisor intends to be bound only as a technical surety or guarantor, otherwise not at all, is doubtless often contrary to fact.

The author cites Backus v. Feeks, 71 Wash. 508, 129 P. 86 (1913), in which a bond was given to guarantee payment of rent under a five-year lease. The lease was effective only as a monthly tenancy because it was not acknowleged as required by law. The court treated the scope of the guaranty as a question of intention and enforced the bond regardless of the invalidity of the lease. In support of this holding, thè court quoted from 20 Cyc. 1421 as follows:

A guaranty of an existing contract may stand by itself, although the obligation guaranteed is invalid . . . . And as the guarantor may by the terms of his contract make himself liable for the principal debt, although it be invalid, the question of whether the liability of a guarantor is to be measured by the liability of the principal debtor is largely a matter of interpretation of the contract of guaranty.

In accordance with these authorities, courts have generally interpreted a guaranty of payment of a particular existing note as a guaranty of the act of payment rather than a guaranty of the discharge of the obligation to pay, even though the contract does not provide, as does the contract here, that the guarantor's obligation is "primary." The leading case is Veazie v. Willis, 72 Mass. (6 Gray) 90 (1856), in which the defendant had declined to endorse a note, but had signed a separate document specifically describing the note and guaranteeing its payment. The signatures of the maker and one of the endorsers had been forged. In holding the guarantor liable, the court observed that if the promise had been written on the note itself, no one would contend that the guarantor could avoid liability to a bona fide purchaser by showing that the names of the prior parties were forged. The opinion continues as follows:

The ground of objection to the maintenance of the action is, that the contract, on the part of the defendant, was made upon the assumption that all the names borne on the note were genuine signatures, and that he intended only to guaranty the solvency and ability of the parties to pay the same, treating all the names thereon as liable, as parties to the note. But it appearing, upon the facts stated, that the defendant guarantied the payment of this particular note, and thereupon the plaintiff concluded his agreement to purchase the note, both parties being equally innocent as to any fraud, misrepresentation or concealment, the court are of opinion that, upon the nonpayment of the same at its maturity by the parties whose names were borne thereon, the defendant, under his guaranty, became liable to pay the same to the plaintiff, although it now is made to appear that the names of the maker of the note and one of the indorsers were forgeries.

This decision was cited and followed in Jones v. Thayer, 78 Mass. (12 Gray) 443, 74 Am.Dec. 602, 603 (1860). There, the defendant had guaranteed payment of a note signed by one Messer, and, when sued on his guaranty, he defended on the ground that Messer's liability on the note was not established because Messer had made it payable to himself and had not endorsed it. The court held that since the particular note in question was exhibited to the defendant when he gave his guaranty, he was bound, and since both of the parties were equally ignorant of the defect, although the guarantor would have had less rights on the instrument if required to pay it, than he

supposed, that was his own error, for which he was responsible.

Likewise, in Holm v. Jamieson, 173 Ill. 295, 50 N.E. 702, 704 (1898), a guaranty of payment was endorsed on a note, and the guarantor was held liable even though the purported maker was a corporation whose name was signed by its treasurer without authority. The court said:

A guarantor may make a contract which is collateral, or one which is independent. This guaranty was an absolute undertaking that the maker would pay the note when due, and by the default of the principal an immediate liability existed. The undertaking of the guarantor was an independent contract, not resting on a necessity to exhaust a remedy against the maker; but, by the terms used in the guaranty, it was an undertaking to every subsequent holder that the instrument guarantied was perfectly valid. By a guaranty of this character, the guarantor undertakes to every subsequent holder that the names of the maker and previous indorsers are really in the handwriting of those to whom they respectively purport to belong; and this is carried to the extent that, where a promise has been written upon the note itself, a person guarantying the payment of that note is bound, even though the names of prior parties, or some one of them, were in fact forged.

A similar holding was made in Newark Finance Corp. v. Acocella, 115 N.J.L. 388, 180 A. 862, 864 (1935). There, a guaranty of payment was endorsed on the back of a note. The court held the guarantor liable even though the maker's signature was forged, saying that the word "guarantee" did not restrict the liability of the endorser as defined by the Uniform Negotiable Instruments Act, but, to the contrary, had the effect of enlarging it.[3]

The same rule has been applied in the case of a surety who adds his signature on a document along with a forged signature. Since the signature of the surety is evidence of his intention to be a primary obligor on the particular note in question, he is liable to an innocent payee, even though he signed in the belief that the forged signature was genuine. Helms v. Wayne Agricultural Co., 73 Ind. 325, 329, 38 Am.Rep. 147 (1881); and see, Young v. Perry, 187 Ala. 122, 65 So. 817, 818 (1914).

Texas authority, also, supports an interpretation of "guarantee" as consistent with a primary obligation. In El Paso Bank & Trust Co. v. First State Bank, 202 S.W. 522, 524 (Tex.Civ.App.—El Paso 1918, no writ), a bank sent a telegram to another bank stating, "[we] guarantee payment" for a carload of watermelons to be shipped to a produce company. The court held this telegram to be "an absolute guaranty of the payment of the money," and, therefore, a "primary and positive agreement" rather than a collateral liability. Accordingly, the suit on the guaranty was held not to be subject to the defenses that the melons did not come up to the agreed standard of weight or quality or that they were not shipped within the time agreed upon between the buyer and the seller. This result was reached even though the telegram did not expressly use the term "primary obligation."

Likewise, in Ganado Land Co. v. Smith, 290 S.W. 920, 923 (Tex.Civ.App.—Galveston 1927, writ ref'd), a guarantor endorsed on the back of a note, "I guarantee payment of the within note . . . ." The guaran-

---

3. *Cf.* Tex.Bus. & Comm.Code Ann. § 3.416 (a) (Tex. UCC 1968):
"Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

The comment under this section states that when a guaranty of payment is added to an indorsement, "the liability of the indorser becomes indistinguishable from that of a co-maker."

tor was held to be "an absolute guarantor of the payment of the note and was *primarily* liable for its payment by reason of his guaranty." (Emphasis added.) [4]

None of the authorities cited by the majority are contrary to those above discussed. Walter E. Heller & Co. v. Allen, 412 S.W.2d 712, 721 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.), recognizes that a guarantor may assume a "less or greater liability" than that of the principal. The quotation from 10 Williston on Contracts § 1214 (3d ed. 1967) states the general rule that a surety or guarantor is not liable to a creditor unless the principal is liable, but the same author recognizes as one of the exceptions to this rule that a "defect in an apparently valid obligation" may be among the defenses not available to a guarantor. *Id.* at 715, 716. Cases cited in support of this text include several in which the defense was forgery of the principal obligation.

The present case is not controlled by Southwest Savings Ass'n v. Dunagan, 392 S.W.2d 761 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.), since there the guaranty was not attached to a particular note, nor did it use the term "primary obligors" or any equivalent language. The guaranty agreement in question referred to a note to be executed by a certain corporation which was yet to be incorporated, and the note sued on was executed by a different corporation. Under these circumstances, the court held that the guaranty was ineffective because the principal obligation referred to never came into existence.

Since, in view of the authorities above discussed, the term "guarantee" is consistent with an intention to assume a primary obligation, all the provisions of this contract may be harmonized and given effect. The contract provides that the undersigned parties "as primary obligor(s) hereby . . . unconditionally guarantee(s) the

prompt payment of principal and interest on the foregoing promissory note when and as due in accordance with its terms." The unconditional guaranty of payment of the particular note referred to is sufficient evidence in itself of a primary obligation under the applicable authorities. Use of the words "as primary obligors" removes all doubt. Although "guarantee(s)" in itself might be subject to more than one interpretation, the unequivocal meaning of the agreement as a whole is that the undersigned parties guarantee that BMT, the corporation named in the note, will pay the amount specified at the time stated, and that if it does not pay, the obligation of the guarantors is primary rather than secondary. The guarantors "guarantee" payment in the sense that they promise to be responsible if the corporation does not pay as provided in the note, and their obligation is "primary" in the sense that it does not depend on the obligation of the corporation. I see nothing contradictory or "mutually exclusive" about the use of both terms.

As a consequence of my view that the contract is not ambiguous, I have no occasion to resort to extrinsic evidence of circumstances to determine the intention of the parties. I will observe, however, that the circumstances under which this agreement was signed are consistent with my view that the guaranty was intended as a primary obligation. The note appeared to be a valid document signed by a Mexican corporation. Plaintiff was not aware of the forgery, according to the jury's finding. As payee of the note, plaintiff intended to negotiate it to a bank, and have it insured by a federal agency concerned with encouragement of foreign trade. A previous note without guaranty was not acceptable to either. The insuring agency furnished a form of guaranty agreement intended to satisfy both itself and the bank. The obvious purpose of the guaranty was to assure the bank and the agency that the guar-

---

4. *Cf.* Estes v. Continental Bank & Trust Co., 421 S.W.2d 158, 161 (Tex.Civ.App.—Dallas 1967, no writ), in which this court considered a contract of guaranty which expressly provided that the liability of the guarantors "shall be primary and not secondary."

antors would stand responsible for payment of this particular note. Presumably, neither the bank nor the insuring agency would accept responsibility for determining whether the Mexican corporation was legally bound to pay. Any suit against the corporation might have to be prosecuted in Mexico, and aside from the inconvenience of such a remedy, the enforceability of such a note under Mexican law may not have been entirely clear. The guarantors were American citizens with contractual relations with the corporation. They agreed to guarantee the note "as primary obligor(s)." This language could only be understood by the bank and the agency, and also by the payee, as obviating any question of whether the corporation was legally bound. The majority's holding that the guarantors' liability depends on that of the corporation would permit them to avoid the guaranty on any ground available to the corporation, and thus defeat a major purpose of the guaranty.

For the reasons stated, I am unable to concur in the judgment of the court.